2014 UT App 161

STATE of Utah, Plaintiff and Appellee,

v.

Michael Waddell JOHNSON, Defendant and Appellant.

No. 20100393–CA.

Court of Appeals of Utah.

July 3, 2014.

---

Ronald Fujino, for Appellant.

Sean D. Reyes and Karen A. Klucznik, for Appellee.

Judge JAMES Z. DAVIS authored this Opinion, in which Judge STEPHEN L. ROTH concurred, with opinion, and Senior Judge RUSSELL W. BENCH dissented, with opinion.[1]

Opinion

DAVIS, Judge:

¶ 1 Michael Waddell Johnson appeals from a conviction of murder, a first-degree felony, following a jury trial in March 2010. We reverse and remand.

## BACKGROUND

¶ 2 The deceased (Decedent) in this case was discovered dead on the night of Monday, January 12, 1998, by her son.[2] She was found lying on her bed fully clothed and wearing shoes. The medical examiner who performed the autopsy explained that Decedent had high levels of alcohol and cocaine in her system. The medical examiner also found that she had sustained injuries to her face and mouth; two small, bloody puncture marks on her left clavicle; hemorrhaging in several muscles on the left side of her neck; and a fracture in the "cricoid" cartilage below her larynx. He characterized the injuries to the face and mouth as recent and indicative of "a blow or direct trauma to that area," and attributed the hemorrhaging in the neck muscles, the cartilage fracture, and abrasions on Decedent's chin as most likely the result of strangulation. He ultimately assigned the cause of death as "asphyxia by strangulation" and marked the high levels of cocaine and alcohol detected in her blood stream as "significant" and "contributory to her death."

¶ 3 Johnson was interviewed by authorities during the police investigation following Decedent's death. He told authorities that he and Decedent went to a party and used cocaine on the night of her death—Friday, January 9, 1998. He was not considered a suspect at that time, and the investigation was eventually closed in June 1998 "as a suspicious death."

¶ 4 Several years later, in 2005, the cold case was reopened and assigned to a new homicide detective (Detective). Detective began his investigation by submitting DNA samples from Decedent and Johnson for analysis. The analysis identified the presence of Johnson's DNA on fingernail clippings that were taken from Decedent during the initial investigation. Detective re-interviewed Johnson, at which time Johnson described having had an on-and-off romantic relationship with Decedent. He admitted to Detective that he sometimes "slapped [Decedent] around" when they were drinking but that they were in the process of patching things up and getting back together. Johnson also told Detective that he and Decedent had used cocaine at his daughter's house the night of Decedent's death before going to the party that he had told the police about during the initial investigation. He indicated that Decedent left the party before him, that he was later picked up from the party by two friends, and that he stayed at a friend's apartment for the rest of the weekend. Detective interviewed other individuals who recounted the circumstances surrounding Decedent's death in ways that conflicted with Johnson's account. One individual informed Detective that Johnson had admitted to him that he had strangled Decedent to death.

¶ 5 Johnson was ultimately charged with alternative counts of murder, one based on a theory of intentional murder and the other based on a theory of depraved indifference murder, both first-degree felonies. *See generally* Utah Code Ann. § 76–5–203(2)(a), (2)(c), (3)(a) (LexisNexis 2012). At trial, the primary controversy was over causation—whether Decedent's physical injuries were caused by a fall, an altercation, or strangulation and whether she died primarily as a result of the mixture of alcohol and cocaine in her system or from strangulation.

¶ 6 The testimony of the medical examiner, called as a witness for the State, illustrates the complexity and closeness of the causation issue. He testified that it was possible that

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R11–201(6).

2. "We relate the facts in the light most favorable to the jury's verdict." *See State v. Litherland,* 2000 UT 76, ¶ 2, 12 P.3d 92.

Decedent's injuries were caused by a fall, punch, kick, or other "blunt-force trauma," including the injuries he ultimately attributed to strangulation. He noted that none of Decedent's injuries were, on their own, sufficient to cause death and that it is "possible that an individual could sustain [all of] those injuries and still survive." He further testified that Decedent's blood alcohol level of 0.33 could potentially have caused her death "in and of itself," that 0.33 is "slightly greater than four times the legal limit," and that other physiological indicators suggested that Decedent was likely still absorbing alcohol, i.e., becoming more intoxicated, at the time of her death. Additionally, the medical examiner testified that cocaine, even in "small amount[s]," can be deadly and that Decedent had a "significant amount of cocaine" in her system. The medical examiner also noted that there were track marks on Decedent's body which "most likely" indicated that she had been an intravenous drug user. Furthermore, the medical examiner testified that the human body, in response to the combination of alcohol and cocaine in the system, produces a third substance, cocaethylene, that "is [thought] to be more toxic to the heart than the cocaine itself." The medical examiner testified that the combination of intoxicants in a person's system during an altercation can also "[m]ake an individual more susceptible to the injuries sustained," while the physiological response to being in an altercation can "increase the effects of the drugs and alcohol." In other words, the medical examiner testified that Decedent could have died "just from the cocaine intoxication or just from the alcohol or a combination," though he believed strangulation to be the most likely cause.

¶ 7 On redirect, however, he also testified that as "a scientist" he never "foreclose[s] possibilities totally" because "anything can happen." He explained that his determination that something is "more likely or probable" means that "the odds are that this is the type of event that took place, as opposed to just some reaching type of hypothetical." He also testified that there is no exact amount of a drug or alcohol that is necessarily deadly because individuals have varying tolerances to intoxicants and that where Decedent was apparently both an intravenous drug user and potentially an alcoholic, she presumably had a higher tolerance of those substances and their combined effects. In other words, the levels that may have been fatal to one person may not necessarily have been fatal to Decedent.[3]

¶ 8 Johnson's expert witness, a forensic pathologist and a chief medical examiner in Michigan, agreed with the medical examiner's analysis on many points—the general time of death estimate provided; that there was evidence of an altercation; that strangulation was a plausible consideration; and that the combined effects of alcohol, cocaine, and the physiological responses to an altercation could have contributed to Decedent's death. The primary difference between the two experts' analyses was which set of factors each believed more likely caused Decedent's death. Johnson's expert believed that "the primary cause associated with [Decedent's] death [was] the drug and alcohol intoxication." He explained that though "there is evidence of an altercation," it is "not sufficient evidence ... to outright call a strangulation cause of death," particularly in light of the intoxication evidence. He stated that "[t]he toxicology testing demonstrates a very high level of alcohol and a combination of alcohol and cocaine intoxication" that is "not disputed and can't be disputed." In light of that evidence, Johnson's expert believed that although strangulation could not be entirely excluded as a possible cause of death or contributing factor, he "would not necessarily associate the [injuries from the] altercation with a specific act of strangulation"; rather, he opined that some of the injuries Decedent sustained only "potentially could have been the result of neck injury associated with a strangulation." Like the medical examiner, Johnson's expert could not be totally certain which was the cause of death, noting that "the evidence in this case does not allow distinct separation between three different

3. This summary is a portion of the medical examiner's testimony and represents only a frac-   tion of the evidence presented on causation.

[cause of death] possibilities" because each possibility was "reasonable . . . based on the evidence." [4]

¶ 9 The trial court granted Johnson's request for a jury instruction on the lesser included offense of homicide by assault, and the court agreed to prepare the corresponding verdict form. The trial court read the instructions to the jury, including an instruction on the elements of homicide by assault, and later observed that it included the same elements instruction in the jury instruction packet. The jury ultimately found Johnson guilty of intentional murder. The verdict form returned by the jury, however, did not list the homicide by assault option, and a separate verdict form for the lesser included offense is missing from the trial record. Omitting the trial court's heading and captioning, the verdict form the jury received stated,

We, the Jurors empaneled in the above case, find the defendant, MICHAEL WADDELL JOHNSON,

_____ Guilty of Criminal Homicide, Murder, intentionally and knowingly causing the death of [Decedent]

Or

_____ Guilty of Criminal Homicide, Murder, acting under circumstances evidencing depraved indifference to human life

Or

_____ Not guilty of Criminal Homicide, Murder.

DATED this—day of _____ 2010.

_____

FOREPERSON

¶ 10 Johnson appeals his conviction, arguing that the missing verdict form indicates that the trial court did not actually provide a

verdict form for the lesser included offense of homicide by assault and that this omission is reversible error. Upon the filing of Johnson's appeal, this court granted the State's remand request to allow the trial court to supplement the record with any documentation related to the missing verdict form. On remand, almost one-and-a-half years after the trial, the trial court issued a minute entry, stating, "After carefully combing through the case file, the exhibits, and all other materials associated with the record of the case, the court was unable to locate the lesser-included offense verdict form." Nonetheless, the trial court concluded that, "Although the lesser-included offense verdict form does not now exist, it is the court's recollection that the court created the lesser-included offense verdict form and sent the verdict form with the jury instructions with the jury when it was released to deliberate." The trial court found that because the jury convicted Johnson of murder, the missing verdict form "was not used by the jury and, therefore, not signed by the jury foreperson" and, as a result, "may not have been brought into the courtroom by the foreperson, but was left in the jury room where it was ultimately discarded by court staff." The trial court issued its minute entry on remand without holding a hearing, and Johnson amended his opening brief to include his challenge to the propriety of the trial court's procedure and findings on remand.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 11 As stated, Johnson's primary argument is that the absence in the record of a verdict form on the lesser included offense establishes that the trial court failed to provide the jury with a verdict form on the lesser included offense [5] We review the jury

---

4. The expert identified those three "distinct" possible causes of death as (1) drug and alcohol intoxication as the sole cause, (2) the combination of a minor altercation with drug and alcohol intoxication, or (3) an altercation with a strangulation component in combination with drug and alcohol intoxication.

5. Johnson also challenges the jury instruction on causation as inadequate for failing to include a definition of proximate cause. Because of the manner in which we resolve the other issues

before us, we do not address this argument. *See State v. Tucker*, 800 P.2d 819, 824 n. 9 (Utah Ct.App.1990) ("An appellate court has discretion as to the nature and extent of the opinions it renders and we need not address in writing each and every argument, issue, or claim raised and properly before us on appeal." (citation and internal quotation marks omitted)). Rather, on remand, we invite the trial court to reconsider the best wording of a causation jury instruction under the facts and circumstances of this case

instructions, including the jury verdict forms, for correctness. *Cf. State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444.

█ ¶ 12 However, before we reach that issue, we must address the question we posed to the parties in a request for supplemental briefing: whether the lesser included offense jury instruction (Instruction 24) misstated the mens rea element of homicide by assault in a manner that effectively removed the lesser offense from the jury's consideration, rendering resolution of the primary issue on appeal—whether the corresponding verdict form on the lesser included offense was properly provided to the jury—irrelevant. When an appellate court discovers an "astonishingly erroneous but undetected ruling" that if left unaddressed "could subject the losing party, especially a defendant in a criminal case, to 'great and manifest injustice,' " "[e]ven if the theory is uncovered after arguments, in the final stages of opinion drafting, the [appellate] court should allow the parties the chance to weigh in on its validity through supplemental briefing." *State v. Robison*, 2006 UT 65, ¶¶ 23, 24 n. 4, 147 P.3d 448 (footnote omitted); *see also State v. Breckenridge*, 688 P.2d 440, 443 (Utah 1983) (vacating the defendant's conviction on grounds first addressed by the defendant on the suggestion of the supreme court during oral argument on appeal). Accordingly, we focus our review on Instruction 24 and review that instruction for correctness. *See Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444.

## ANALYSIS

### I. The Homicide By Assault Jury Instruction

¶ 13 In response to this court's request, the parties submitted supplemental briefing addressing for the first time the argument that Instruction 24 misstated the mens rea element of the lesser included offense in a manner that effectively removed the lesser offense from the jury's consideration and

and the propriety of omitting proximate cause from the causation instruction. *See generally State v. Gonzales,* 2002 UT App 256, ¶ 6, 56 P.3d 969 (providing the causation instruction that the

rendered the question of the missing verdict form inconsequential. Our request for supplemental briefing first instructed the parties to address the propriety of this court's review of Johnson's conviction on alternative grounds under *State v. Robison,* 2006 UT 65, 147 P.3d 448, and other applicable law.

### A. The Facts of this Case Satisfy the *Robison* Standard.

█ ¶ 14 The State argues that the invited error doctrine precludes our review of Instruction 24 under a plain error analysis because Johnson's trial counsel provided and approved of the instruction given to the jury. "The doctrine of invited error bars review for plain error when the defendant led the trial court to believe that there was nothing wrong with the instruction," *State v. Binkerd,* 2013 UT App 216, ¶ 21, 310 P.3d 755 (citation and internal quotation marks omitted), which includes situations in which the defendant proposed the jury instruction he challenges on appeal, *see State v. Perdue,* 813 P.2d 1201, 1206 (Utah Ct.App.1991) (citing invited error grounds in refusing to consider the defendant's arguments challenging the correctness of a jury instruction that defense counsel submitted to the trial court), *aff'd sub nom. Perdue v. Utah Bd. of Pardons,* 900 P.2d 1093 (Utah 1995). The State also contends that because Johnson's appellate counsel has not raised an ineffective assistance claim related to the instruction, we are precluded from reviewing the matter under an ineffective assistance framework. *See State v. McNeil,* 2013 UT App 134, ¶ 25, 302 P.3d 844 ("While invited error precludes a plain error claim, it does not preclude a claim for ineffective assistance of counsel."), *cert. granted,* 317 P.3d 432 (Utah 2013). Indeed, our case law favors application of the invited error rule even "where invited error butts up against manifest injustice." *Perdue,* 813 P.2d at 1206. We are also mindful that "[a]n appellate court that does the lifting for an appellant distorts [the] fundamental allocation of benefits and burdens" between the parties on appeal. *Robison,* 2006 UT 65,

trial court in this case adopted almost in full, omitting the one sentence that addressed proximate cause).

¶ 21, 147 P.3d 448. While we agree that we cannot review this issue under an ineffective assistance framework and that the doctrine of invited error likely applies here as well,[6] our appellate courts have also long recognized that an unpreserved issue may be considered on appeal if exceptional circumstances exist. *See State v. Archambeau*, 820 P.2d 920, 923 n. 5 (Utah Ct.App.1991) (collecting cases); *see also State v. Kazda*, 545 P.2d 190, 193 (Utah 1976) (explaining that a party's failure to comply with standard preservation rules should be excused "rarely" and only "where there appears to be a substantial likelihood that an injustice has resulted").

¶ 15 In *State v. Breckenridge*, 688 P.2d 440 (Utah 1983), the defendant addressed an argument challenging the adequacy of his guilty plea for the first time during oral argument on appeal, *"[o]n the suggestion of [the] Court."* *Id.* at 443 (emphasis added). The supreme court reasoned that "[t]he general rule that constitutional issues not raised at trial cannot be raised on appeal is excepted to when a person's liberty is at stake" and determined that because the defendant's "felony conviction and sentence rest[ed] on the outcome of his appeal," the court needed to address the otherwise unargued question of the adequacy of the defendant's plea. *Id.* (citing *Pratt v. City Council of the City of Riverton*, 639 P.2d 172, 173–74 (Utah 1981)). Subsequent case law has clarified that "[f]actually, ... *Breckenridge* is a case in which the 'exceptional circumstances' exception would have allowed appellate review" and that a defendant's liberty interest is just one factor to be considered in determining whether exceptional circumstances exist. *See Archambeau*, 820 P.2d at 924–25; *see also State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994) (agreeing with the *Archambeau*

court's rejection of a stand-alone "jeopardized liberty exception").

¶ 16 Our supreme court revisited *Breckenridge* in its *Robison* decision, in which it held that the court of appeals erred by reversing the defendant's conviction on an unargued legal theory. *Robison*, 2006 UT 65, ¶ 25, 147 P.3d 448. The *Robison* court identified the exceptional circumstance relied on in *Breckenridge* as the court's sua sponte recognition "that the briefing overlooked a compelling argument that, if presented, would likely merit reversal of Mr. Breckenridge's conviction." *Id.* ¶ 24. The *Robison* court explained that appellate courts could avoid the catch–22 of addressing an unargued issue on the merits or "refusing, out of principle, to reverse an astonishingly erroneous but undetected ruling," that would "subject the losing party, especially a defendant in a criminal case, to 'great and manifest injustice,'" by providing the parties an opportunity to address the unargued issue "before using it to justify a reversal." *Id.* ¶¶ 23–25 (footnote omitted). Inviting supplemental briefing, or as was the case in *Breckenridge*, directly questioning the parties during oral argument, provides a forum for the parties to argue the issue and both "honor[s] the adversarial process" and reduces the risk of subjecting a criminal defendant to a " 'great and manifest injustice.' " *Id.* ¶¶ 24–25. The *Robison* court explained that had it "agreed with the court of appeals that a 'great and manifest injustice' would befall Mr. Robison were he not allowed to present the argument [first raised by the court of appeals] ..., it would then be appropriate ... to remand the case for arguments on the merits of the [unargued legal theory]." *Id.* ¶ 25. Because the supreme court determined that the court of appeals' legal theory was erroneous, however, the court held that remand was not neces-

---

6. The applicability of the invited error doctrine is not as obvious as the State's argument implies. It is true that Johnson's trial counsel requested the lesser included offense instruction, but the record does not contain the two drafts of the elements instruction that his trial counsel provided to the court. Further, the trial court acknowledged that it was going to use the version of the instruction offered by Johnson's trial counsel "that quotes the statute[ ] itself," and the court had earlier correctly quoted the homicide by assault statute while questioning the prosecutor about the propriety of providing a lesser included offense instruction. In other words, we cannot definitively ascertain if the language employed in the final instruction matches the language supplied by Johnson's trial counsel. Additionally, unlike the majority of invited error cases, here we are not presented with a challenge *initially raised by the defendant* that the instruction incorrectly stated the law. *See, e.g., State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct.App.1991) (collecting cases).

sary; "a 'great and manifest injustice'" would not "befall Mr. Robison were he not allowed to" address a repudiated legal argument. *Id.* (internal quotation marks omitted).

■ ¶ 17 *Robison* seeks to balance the sometimes conflicting ideals of procedural regularity and the institutional integrity of the courts with basic notions of fairness and justice. In other words, as has long been recognized by our jurisprudence, *Robison* effectively reaffirms the notion that "the safeguards of the rights and privileges of the accused should not be overlooked and a loose rein held for the prosecution and a tight, technical, and restricted rein held on the accused." *State v. Cobo,* 90 Utah 89, 60 P.2d 952, 958 (1936) ("[I]n cases of grave and serious charged offenses and convictions of long terms of imprisonment, cases involving the life and liberty of the citizen, we think that when palpable error is made to appear on the face of the record and to the manifest prejudice of the accused, the court has the power to notice such error and to correct the same, though no formal exception was taken to the ruling."); *see also State v. Bullock,* 791 P.2d 155, 164 (Utah 1989) (Stewart, J., dissenting) ("Neither a counsel's nor a judge's error should be the cause of one's going to prison. Although we often refuse to entertain a claim of error because an attorney failed to make proper objections in the trial court or failed to raise an error on appeal, the law should seek to make a party liable for his own transgressions, not for the sins of his lawyer."); *cf.* Utah R. Civ. P. 1 advisory committee note ("[A] long-standing but often overlooked directive in Rule 1[is] that the Rules of Civil Procedure should be construed and applied to achieve the just, speedy and inexpensive determination of every action." (internal quotation marks omitted)); Utah R.Crim. P. 1(b) ("These rules are intended and shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary expense and delay."); *State v. Eldredge,* 773 P.2d 29, 42 (Utah 1989) (Stewart, J., dissenting) (recommending a broad application of the plain error standard so as to permit appellate review of potentially reversible errors "at the earliest possible stage," rather than delay a court's "consideration of reversible error until the case returns on a writ of habeas corpus," at which time the court would address "the question of whether the trial was fundamentally fair, irrespective of whether there were appropriate objections" (citation omitted)).[7]

■ ¶ 18 The facts of this case are similar to *Breckenridge* because "[o]n the suggestion of this court," the parties have "addressed for the first time" an issue that will implicate Johnson's "felony conviction and sentence." *See Breckenridge,* 688 P.2d at 443; *see also State v. Brown,* 853 P.2d 851, 853 (Utah 1992) (construing *Breckenridge* as presenting "clear plain error and obvious constitutional ramifications"); *Archambeau,* 820 P.2d at 926 (citing *Breckenridge* as an example of when "extenuating or unusual circumstances" justify the application of the exceptional circumstances exception). Further, the issue this court has asked the parties to brief is at the heart of Johnson's primary argument on appeal—that reversal is necessary because the missing verdict form for the lesser included offense indicates that the jury never received the form. It would be anomalous to address the missing verdict form issue without acknowledging the graver issue that Instruction 24 is so fatally defective that any verdict form based on that instruction would have been meaningless. Accordingly, exceptional circumstances permit our review of the jury instruction issue here. *See generally State v. Irwin,* 924 P.2d 5, 9–11 (Utah Ct.

---

7. This principle has been recognized by courts in other jurisdictions as well. *See, e.g., Wiborg v. United States,* 163 U.S. 632, 658, 16 S.Ct. 1127, 41 L.Ed. 289 (1896) (stating that when "a plain error [is] committed in a matter so absolutely vital to defendants, [the court is] at liberty to correct it," regardless of whether the "question was ... properly raised"); *United States v. Santistevan,* 39 F.3d 250, 256 (10th Cir.1994) (recognizing that an issue "not raised below" or "asserted in the briefs on appeal" "ordinarily constitutes a waiver of the issue, precluding [the appellate court] from reviewing the merits of the claim," but that the circuit's "case law unquestionably recognizes [the appellate court's] inherent power to raise an issue sua sponte as plain error under circumstances strongly implying a fundamental defect or error of sufficient magnitude to undermine our confidence that justice was served").

App.1996) (collecting cases applying the exceptional circumstances exception and cases rejecting the applicability of the exception).

¶ 19 For reasons explained *infra*, we determine that the error in the homicide by assault jury instruction presents the very type of "astonishingly erroneous but undetected ruling" that our jurisprudence and the State, in its supplemental briefing, agree an appellate court should not "refus[e], out of principle, to reverse." *State v. Robison*, 2006 UT 65, ¶ 23, 147 P.3d 448. We have accordingly adhered to the *Robison* requirement that we first seek supplemental briefing from the parties before addressing the merits of this otherwise unargued legal theory. *See id.* ¶ 24.

**B. The Homicide By Assault Instruction Misstates the Law.**

■ ¶ 20 Here, there is no dispute that Johnson was entitled to a lesser included offense instruction or that the trial court read such an instruction to the jury. *See generally State v. Spillers*, 2007 UT 13, ¶ 12, 152 P.3d 315 (explaining the two-part test to determine when an instruction on a lesser included offense must be granted). Rather, the issue is whether the instruction provided correctly stated the mens rea element of homicide by assault and, if an error did occur, whether it was harmful. *See Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 796 (Utah 1991) ("[A]n error is harmful only if the likelihood of a different outcome is sufficiently high as to undermine our confidence in the verdict.").

¶ 21 To determine whether Instruction 24 correctly states the law, "we compare the instruction given with the statutory elements of the offense." *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Instruction 24 states,

> Homicide by Assault [requires that the jury] find from all of the evidence, beyond a reasonable doubt each and every one of the following elements ...: 1. That on or about the 10th day of January, 1998, ... [Johnson], ... under circumstances not amounting to aggravated murder, murder,

or manslaughter caused the death of [Decedent];
>
> 2. And that he did so intentionally or knowingly while attempting, with unlawful force or violence, to do bodily injury to [Decedent].

¶ 22 The Utah Code defines homicide by assault, stating, "A person commits homicide by assault if, under circumstances not amounting to aggravated murder, murder, or manslaughter, a person causes the death of another *while intentionally or knowingly attempting, with unlawful force or violence, to do bodily injury to another*." Utah Code Ann. § 76–5–209(1) (LexisNexis 2012) (emphasis added).[8] The statute defines the mens rea element of homicide by assault as the intent to assault. Unlike the statute, Instruction 24 places the "while" after the mens rea language, separating the "intentionally and knowingly" elements from the act of assault. As a result of this difference, Instruction 24 instructed the jury that for Johnson to be convicted of the lesser included offense, it must find that Johnson "intentionally and knowingly" "caus[ed] the death of" Decedent, whereas the statute actually requires a finding that a defendant "intentionally or knowingly attempt[ed], with unlawful force or violence, to do bodily injury to another." Not only does Instruction 24 misapply the mens rea element for homicide by assault, the mens rea that it does describe is the same as that required for a conviction on the greater offense of criminal homicide. *See generally id.* § 76–5–203. By defining homicide by assault as requiring the same mens rea as criminal homicide, Instruction 24 essentially removed from the jury the ability to meaningfully consider the lesser included offense.

¶ 23 The differences between Instruction 24 and the criminal homicide instruction (Instruction 21) do not remedy this error. *See generally State v. Lawson*, 688 P.2d 479, 481 (Utah 1984) (explaining that "a reviewing court must consider all of the jury instructions read together in light of the total evidence before the jury" in "determining whether the jury was properly instructed"). Instruction 21 states,

---

**8.** We cite the current version of the Utah Code     for the convenience of the reader.

Before you can convict [Johnson] ... of the crime of Criminal Homicide, Murder as charged in the Alternative Count I of the Information, you must find from all of the evidence and beyond a reasonable doubt each and every one of the following elements of that offense:

1. That on or about the 10th day of January, 1998, ... [Johnson], ... *caused the death of [Decedent]*; and

2. That he did so *intentionally and knowingly.*

(Emphases added.) With the exception of the phrases "under circumstances not amounting to aggravated murder, murder, or manslaughter" and "while attempting, with unlawful force or violence, to do bodily injury to [Decedent]" (the assault language), the two instructions are identical. The first phrase merely asserts that homicide by assault is not the same as murder, but the effect of this on a jury could easily have been negated by the fact that Instruction 24 then duplicates the elements given in Instruction 21 on criminal homicide. Likewise, to a jury, the inclusion of the assault language in Instruction 24 may appear as little more than stylistic.[9] And the assault language is not contrary to the notion that murder, in its simplest definition, necessarily involves the use of "unlawful force or violence[ ] to do bodily injury." Indeed, a finding by the jury that Johnson intended to place his hands on Decedent's neck and squeeze her throat supports a conviction of either criminal homicide or homicide by assault, with the distinguishing factor being whether Johnson intended only to assault Decedent or whether he intended to kill her. *Cf. State v. Fisher*, 680 P.2d 35, 37 (Utah 1984). In essence, the jury was erroneously provided with two semantically different but substantively identical in-

structions outlining the elements of criminal homicide and no instruction accurately outlining the elements of homicide by assault.

C. The Error Is Harmful.

¶ 24 For the error in Instruction 24 to warrant reversal, it must be prejudicial, i.e., absent the error "the likelihood of a different outcome [must be] sufficiently high as to undermine our confidence in the verdict." *Crookston*, 817 P.2d at 796. "[W]here proof of an element of the crime is in dispute, the availability of the 'third option'—the choice of conviction of a lesser offense rather than conviction of the greater or acquittal—gives the defendant the benefit of the reasonable doubt standard." *See State v. Baker*, 671 P.2d 152, 157 (Utah 1983); *see also Beck v. Alabama*, 447 U.S. 625, 644–45, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980) (describing lesser included offense instructions as "provid[ing] a necessary additional measure of protection for the defendant," especially "in a case in which the jury agrees that the defendant is guilty of *some* offense, though not the offense charged").

¶ 25 The State argues that any error in Instruction 24, and for that matter any error in providing the jury with the proper homicide-by-assault verdict form, is harmless because Johnson's conviction of the greater offense "necessarily forecloses" the jury from having convicted him of the lesser offense.[10] In other words, although the State acknowledges that an appellate court should not "refuse 'to reverse an astonishingly erroneous but undetected ruling,'" it contends that Johnson's conviction of the greater offense undermines any harm that may have been caused by the error in Instruction 24 and the now-missing verdict form.[11] (Quoting *State*

9. Both homicide by assault and criminal homicide are intent-based crimes. However, the instructions defining "intentionally" and "knowingly" offer little clarification because each is defined in conduct-based and result-based terms and in an either/or fashion. *See generally State v. Lawson*, 688 P.2d 479, 481 (Utah 1984).

10. To the extent the State's argument may be read to imply that depraved indifference murder is a lesser included offense of intentional murder, we disagree. These two types of murder are two theories of the same offense that were here

charged in the alternative. Both constitute first degree felonies subject to the same sentence. *See* Utah Code Ann. § 76–5–203(2)(a), (2)(c), (3) (LexisNexis 2012). There is only one lesser included offense at issue in this case—homicide by assault.

11. The State also argues that even though Instruction 24 does not track the statutory language for homicide by assault, this error harms the State, not Johnson, by imposing on the State "the additional burden of proving that [Johnson] intend[ed] the result of his conduct, rather than

*v. Robison*, 2006 UT 65, ¶ 23, 147 P.3d 448). We disagree.

¶ 26 Both the convicted offense of criminal homicide and the lesser included offense of homicide by assault are intent-based offenses. The cases the State relies on in support of its argument involve challenges to the omission of instructions on lesser included offenses that have lower mens rea requirements than the convicted offenses and are therefore not helpful to our analysis. *See, e.g., State v. Pearson*, 943 P.2d 1347, 1351 (Utah 1997) (determining that the trial "court's refusal to give an instruction on manslaughter, an offense requiring recklessness, constituted ... harmless error" where the jury convicted the defendant of "aggravated murder, which requires knowing or intentional killing"); *State v. Gotschall*, 782 P.2d 459, 464 (Utah 1989) (concluding that it was harmless error "for the trial court not to instruct the jury on negligent homicide" where the defendant was convicted of second-degree depraved indifference murder); *State v. Standiford*, 769 P.2d 254, 267 (Utah 1988) ("[S]ince the jury convicted of second degree murder despite the fact that an instruction was given on the lesser included offense of manslaughter, failure to give a negligent homicide instruction was, at the very best, harmless error.").

¶ 27 Given how close the causation evidence is, as discussed *supra* ¶¶ 6–8, and the fact that both the lesser and greater offenses here involve an "intentionally and knowingly" mens rea, we cannot agree that Johnson's conviction of the greater offense indicates that any error in Instruction 24 or in providing the homicide-by-assault verdict form was harmless. We agree with Johnson that because Instruction 24 effectively mirrored the elements of the criminal homicide instruction, the jury may have believed that the two instructions required it to make "essentially the same factual determinations and that it did not matter which offense was selected." As Johnson put it, "[t]he choice is not a choice when," as instructed, "there is no real difference between" criminal homicide and homicide by assault. The error in Instruction 24 left the jury with the option of either

just the act." We reject this argument as una-

"convicting the defendant of [the charged offense], or acquitting him outright." *See Keeble v. United States*, 412 U.S. 205, 213, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). And "[w]e cannot say that the availability of a third option—convicting the defendant of [homicide by assault]—could not have resulted in a different verdict." *See id.; cf. Beck*, 447 U.S. at 642, 100 S.Ct. 2382 (explaining the importance of lesser included offense instructions and stating that to "expect a jury to ... find a defendant innocent and thereby set him free when the evidence establishes beyond doubt that he is guilty of some violent crime" is to "require[ ] of our juries clinical detachment from the reality of human experience" (citation and internal quotation marks omitted)). Accordingly, the judgment must be reversed and the case remanded to the trial court. *Cf. State v. Oldroyd*, 685 P.2d 551, 555–56 (Utah 1984) (reversing the defendant's conviction because he was improperly denied a jury instruction on a lesser included offense).

## II. Whether the Verdict Form Was Properly Provided to the Jury Is Immaterial.

¶ 28 Johnson's primary argument on appeal is that the absence of a lesser-included-offense verdict form in the record indicates that the trial court failed to provide one. *Cf. People v. Nguyen*, 4 Cal.Rptr.3d 211, 232 (Cal.Ct.App.2003) (stating that instructions on lesser included offenses must be accompanied by corresponding verdict forms). The evidence before us indicates that the verdict form is missing from the official record, as well as from the files retained by the State's and Johnson's trial attorneys and any extra-record files maintained by the court, such as personal files of the trial judge and court staff. But as we have stated before, even assuming that the verdict form was properly sent to the jury, it would have reflected a verdict option that was not properly defined for the jury and, indeed, was defined in a manner equating it with the greater offense on which the jury was properly instructed.

vailing.

## CONCLUSION

¶ 29 The "astonishingly erroneous" placement of the mens rea element in Instruction 24 effectively removed the lesser included offense from the jury's consideration by equating the lesser offense with the greater offense. This error renders the question of whether the verdict form on the lesser included offense was ever provided to the jury irrelevant. Accordingly, the jury did not have a meaningful opportunity to consider the lesser included offense. That the jury convicted Johnson of the greater offense does not demonstrate that a proper instruction on the lesser offense would not have resulted in a different outcome for Johnson, particularly in light of the closeness of the causation issue. Our confidence in the verdict is therefore undermined. We reverse Johnson's conviction and remand the case to the trial court.

ROTH, Judge (concurring):

¶ 30 The lead opinion concludes that we may review an error in a jury instruction that was unpreserved below and unargued on appeal based on the supreme court's opinion in *State v. Robison*, 2006 UT 65, 147 P.3d 448. In that case, the court explained that where an appellate court notices an "astonishingly erroneous but undetected ruling" that would "subject the losing party ... to great and manifest injustice," the court may address the issue, but only if it invites supplemental briefing from the parties. *Id.* ¶¶ 23–25 (citation and internal quotation marks omitted). Because the jury instruction is clearly defective and the issue "is at the heart of Johnson's primary argument on appeal," the lead opinion concludes that "exceptional circumstances permit our review of the jury instruction issue here." *See supra* ¶ 18. In dissent, Judge Bench argues that Johnson's counsel invited any error, and in a footnote he questions the applicability of the "extraordinary circumstances" exception in this context, noting that *Robison* did not discuss it. *See infra* ¶ 48 n. 2.

¶ 31 Our court has determined that "the plain error and exceptional circumstances exceptions are sufficiently broad to encompass any situation requiring Utah's appellate courts to consider a constitutional issue for the first time on appeal in the interest of justice." *State v. Archambeau*, 820 P.2d 920, 926 (Utah Ct.App.1991) (internal quotation marks omitted); *see State v. Lopez*, 886 P.2d 1105, 1113 (Utah 1994) (adopting *Archambeau*'s statement about plain error and exceptional circumstances). Thus, it seems that whatever preservation exception *Robison* recognized, it should fit into one of these two exceptions. The *Robison* court noted that the plain error exception did not apply, *see* 2006 UT 65, ¶ 15, 147 P.3d 448, and the case it cited for the proposition that an appellate court can invite supplemental briefing on an unpreserved issue has been recognized as an exceptional circumstances case, *see id.* ¶ 24 (citing *State v. Breckenridge*, 688 P.2d 440, 441–43 (Utah 1983)); *Archambeau*, 820 P.2d at 924 (noting that *Breckenridge* is an exceptional circumstances case). So it appears that the *Robison* exception to the preservation requirement must be at least a kind of exceptional circumstance.

¶ 32 The exceptional circumstances exception is "ill-defined," however. *State v. Holgate*, 2000 UT 74, ¶ 12, 10 P.3d 346. And it may be that courts have avoided placing clear limits on that exception because it is meant to be a rarely used safety valve, permitting review of errors so serious that ignoring them would not only be manifestly unjust to a particular defendant, but would also undermine the public's confidence in the integrity and efficacy of our system of justice. For example, the Utah Supreme Court has recognized that exceptions to the preservation rule reflect the need to " 'balance ... procedural regularity with the demands of fairness,' " noting that " '[a]t bottom, the plain error rule's purpose is to permit us to avoid injustice." ' *Id.* ¶ 13 (quoting, respectively, *State v. Verde*, 770 P.2d 116, 122 n. 12 (Utah 1989), and *State v. Eldredge*, 773 P.2d 29, 35 n. 8 (Utah 1989)).

¶ 33 As a consequence, while I concur in Judge Davis's opinion, I write separately to articulate further why I believe reaching the merits is appropriate despite any invited error and even though the facts here are different in some aspects from recent cases that

have applied the exceptional circumstances exception.

¶ 34 The supreme court has stated that the exceptional circumstances exception to the preservation rule "applies primarily to rare procedural anomalies," *id.* ¶ 12 (citation and internal quotation marks omitted), and the court has cautioned that the exception is "applied ... sparingly," being reserved for "the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice," *State v. Nelson–Waggoner,* 2004 UT 29, ¶ 23, 94 P.3d 186. The most prominent cases where Utah courts have found exceptional circumstances and reviewed unpreserved issues are "where a change in law or the settled interpretation of law color[s] the failure to have raised an issue at trial." *See Provo City v. Ivie,* 2008 UT App 287, ¶ 6, 191 P.3d 841 (citation and internal quotation marks omitted); *see also State v. Lopez,* 873 P.2d 1127, 1134 n. 2 (Utah 1994); *State v. Haston,* 846 P.2d 1276 (Utah 1993) (per curiam). For example, in *Haston,* the supreme court reached an unpreserved issue to reverse a defendant's conviction because while his appeal was pending, the court issued a decision abolishing the offense for which he was convicted. 846 P.2d at 1277. It noted that failing "to consider [the] defendant's assigned error merely because he was tardy or inartful in raising the issue previously strikes us as manifestly unjust." *Id.*

¶ 35 Admittedly, there is no intervening change in law here that would have affected Johnson's decision to object to an error in the jury instructions like there was in *Haston.* But allowing Johnson's conviction to stand despite a fatally flawed jury instruction that misstated a material element of a plausible lesser included offense with significantly reduced consequences (zero to five years for homicide by assault versus five years to life for murder) seems to me to be manifestly unjust for reasons already articulated in the lead opinion. And those reasons include

troubling circumstances that I believe qualify this case as a "rare procedural anomal[y]." *See Holgate,* 2000 UT 74, ¶ 12, 10 P.3d 346.

¶ 36 For example, the verdict form the trial court claims to have provided to the jury is absent from the official record, and it is missing from the files retained by the State, Johnson's trial attorneys, and the trial court. A central dispute in the parties' initial briefing was whether the trial court had actually given the jury the verdict form for the lesser included offense. As the lead opinion notes, the undetected error is therefore virtually inseparable from the underlying merits of the issues preserved below and argued on appeal: Does it really matter if the jury received the form if the jury instruction that provided the option of conviction on a lesser offense was itself fatally flawed? And this seems to me to be the basis for taking this issue up, though unpreserved and unargued; if the unpreserved issue bore no relation to the missing verdict form or other arguments Johnson addressed in his initial briefing, I believe we would not be faced with the type of "rare procedural anomaly" that would justify a departure from well-established preservation requirements.

¶ 37 The dissent argues that defense counsel invited any error [12] because after obtaining for his client the considerable benefits of a lesser-included-offense instruction, he appears to have provided one that in effect mirrored the elements of the greater crime, thereby precluding relief on the basis of plain error. And it is generally true that "[b]ased on the invited error doctrine, ... 'if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction, we will not review the instruction under the manifest injustice exception.'" *State v. Halls,* 2006 UT App 142, ¶ 13 n. 1, 134 P.3d 1160 (quoting *State v. Hamilton,* 2003 UT 22, ¶ 54, 70 P.3d 111). But the kind of error that warrants *Robison*'s "astonishingly erroneous" description is very likely to involve plain error,

---

12. It is not entirely clear to me that trial counsel ended up being the source of the jury instruction. As the lead opinion points out, the court invited Johnson's trial counsel to provide the lesser included offense jury instruction after stating that counsel's proposed instruction "quotes the stat-

ute[ ] itself." *See supra* ¶ 14 n. 6. The final instruction, of course, misquotes the statute in a way that deprives Johnson of the benefits of obtaining the instruction in the first place. And the draft instructions Johnson's counsel submitted to the court are not in the record.

invited error, and almost inevitably, ineffective assistance of counsel. Such errors are unlikely to occur at trial—and then be overlooked on appeal—without counsel involvement, and the more astonishing the error, the more likely it is to have involved some serious misstep by counsel. So, in such circumstances, invited error should not pose another barrier to review but rather should be acknowledged as an integral aspect of the flawed process that makes the error so astonishing to begin with.

¶ 38 The dissent also argues that any error is best left to a postconviction proceeding, a position that has some appeal. For example, while in the face of the error in the jury instruction itself, I could not have joined the dissent's proposed resolution of the original issue by simply affirming the trial court's decision on remand that the jury had indeed received a verdict form for the lesser included offense, the severity of the instruction error itself suggests another path to affirmance—we might conclude that the error in the homicide-by-assault jury instruction is egregious enough to render any failure to provide the jury with the corresponding verdict form essentially harmless and then simply affirm on Johnson's failure to have addressed that overarching problem. And the lead opinion sufficiently articulates the error in the jury instruction and its likely significance to the outcome of the case to provide Johnson with a fairly weighty attachment to a potential petition for postconviction relief having obvious substance. The lead opinion, however, has convinced me that the significance of both the substantive error and the rare anomaly that brought it before us unnoticed and unremarked by either Johnson's trial and appellate counsel or by the trial court [13] clears the bar of Robison's standard—an "astonishingly erroneous but undetected ruling" that would "subject the losing party . . . to a great and manifest injustice," 2006 UT 65, ¶ 23, 147 P.3d 448 (internal quotation marks omitted)—in the context of an appeal where the undetected error rendered the issue actually presented to us not simply "harmless," but entirely superfluous. And the ultimate result seems sufficiently foreseeable that to require the defendant to now go through the exercise of clearing the hurdle of unpreserved and invited error by showing ineffective assistance of both trial and appellate counsel in a postconviction proceeding—in which he has no statutory or constitutional right to be represented by counsel at all—in my view, would simply compound a series of serious and inexplicable missteps while doing little to reinforce the integrity of our preservation rules.

¶ 39 Finally, I disagree with the dissent's suggestion that the flawed instruction was harmless error because it "may have increased the likelihood of a complete acquittal by overstating the mens rea required for conviction of the lesser offense." *See infra* ¶ 50. Our supreme court has noted that defendants are entitled to lesser-included-offense instructions to "afford[them] the full benefit of the reasonable doubt standard." *State v. Baker,* 671 P.2d 152, 156 (Utah 1983). Accordingly, the failure to provide such an instruction where it is warranted implicates a defendant's constitutional rights. *State v. Oldroyd,* 685 P.2d 551, 555 (Utah 1984) (stating that where "the evidence offered in the case would permit a jury to find a defendant guilty of the lesser offense and not guilty of the greater, due process requires that a lesser included offense instruction must be given"). The interests at issue here are therefore simply too important to leave their protection to the off chance that the jury could have selected a less severe punishment from two instructions that described essentially the same criminal conduct.

¶ 40 For these reasons, I concur in Judge Davis's decision.

BENCH, Senior Judge (dissenting):

¶ 41 I respectfully dissent. The jury in this case concluded beyond a reasonable doubt that Johnson committed the first degree felony of murder by intentionally and

---

**13.** It is to the State's credit that it pointed out in a footnote in its initial brief that the jury instruction did not correspond to the statute's definition of the offense of homicide by assault. But the State did not explore in depth the details of that divergence or its significance, nor was it required to do so; and we did not come to appreciate the problem until well after oral argument.

knowingly causing the death of Decedent. The majority opinion reverses Johnson's conviction because of a misstatement in the jury instructions that was invited by defense counsel below and was not raised as an issue by the parties on appeal. By reversing Johnson's conviction on this basis, my colleagues have, in my opinion, abandoned their adjudicative responsibilities and improperly become advocates for a party. I would address only the arguments that Johnson initially raised on appeal and, because I find those arguments to be unavailing, affirm Johnson's conviction.

¶ 42 As originally briefed by the parties, this appeal involved just two issues. First, Johnson argued that the trial court improperly instructed the jury on the issue of causation. Johnson wanted an instruction on "intervening causes" for Decedent's death, and he argued on appeal that the trial court erred when it refused to give his requested instruction. I agree with the State that this issue was inadequately briefed. *See* Utah R.App. P. 24(a)(9) (enumerating requirements for argument sections of appellate briefs); *see also State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 ("Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." (citation and internal quotation marks omitted)). Further, even if Johnson could establish error from the lack of instruction on intervening causes, he has failed to establish that he was prejudiced by the lack of such an instruction. *Cf. State v. Stringham*, 2001 UT App 13, ¶ 17, 17 P.3d 1153 ("Failure to give requested jury instructions constitutes reversible error only if their omission tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." (citation and internal quotation marks omitted)).

¶ 43 Second, Johnson contended that he is entitled to a new trial because the record on appeal does not include a verdict form on the lesser included offense of homicide by assault. "[N]ot every instance of a missing portion of the record necessitates reversal." *State v. King*, 2010 UT App 396, ¶ 56, 248

P.3d 984. Here, Johnson acknowledged that the trial court expressly stated, in a minute entry on remand, that the court remembered preparing and providing the jury with a verdict form on the lesser included offense. I would hold that the trial court's recollection that the jury received the verdict form defeats Johnson's claim that he was prejudiced by the lack of that form in the record. *See id.* ¶¶ 54–57 (affirming the post-trial reconstruction of an entire set of missing jury instructions where trial court relied on its own memory and typical practices); *see also State v. Davis*, 2013 UT App 228, ¶¶ 89–95, 311 P.3d 538 (discussing record reconstruction procedures); *State v. Fowers*, 2011 UT App 383, ¶ 19, 265 P.3d 832 (relying, in part, on the trial court's memory of an off-the-record evidentiary ruling to evaluate an ineffective assistance of counsel claim).

¶ 44 Thus, on the issues originally raised by the parties, this appeal should result in a straightforward affirmance. However, over my objection, my colleagues decided to call for additional briefing on the ground that the court had "identified an issue that was not addressed by the parties' briefing"—a misstatement of the mens rea element in the lesser included offense instruction on homicide by assault (Instruction 24). The briefing order sought the parties' input on whether the language of Instruction 24 constitutes error and, if so, what the effect of that error should be. Almost as an afterthought, the briefing order invited the parties to discuss "as a threshold issue, the propriety of this court addressing an unpreserved and otherwise unbriefed issue in general and in light of the circumstances and the supreme court's decision in *State v. Robison*, 2006 UT 65, 147 P.3d 448."

¶ 45 In his supplemental brief, Johnson agrees with the briefing order's suggestion that Instruction 24 is erroneous and urges that the error warrants reversal of his conviction. Johnson argues that this result is appropriate under *Robison* because this is a criminal matter, failure to address the unargued issue would subject him to "great and manifest injustice," and the parties were allowed to present supplemental briefing on the issue. *See* 2006 UT 65, ¶¶ 23–24 & n. 3,

147 P.3d 448. However, Johnson's supplemental brief never specifically addresses the lack of preservation of the mens rea issue, nor does it raise a claim that his trial counsel provided him with ineffective assistance by submitting the erroneous instruction to the trial court.

¶ 46 The State, in its supplemental brief, argues that Instruction 24 does not fall within *Robison*'s guidelines for when an appellate court can raise issues sua sponte. The State goes on, however, to point out that Instruction 24 was proposed by defense counsel. Therefore, the State argues, our consideration of the issue is barred by the doctrine of invited error. *See, e.g., State v. Binkerd,* 2013 UT App 216, ¶ 21, 310 P.3d 755.

¶ 47 I agree with the State that the apparent error in Instruction 24 was invited by defense counsel below and that we are therefore precluded from considering it. "Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice." Utah R.Crim. P. 19(e). However, "if counsel, either by statement or act, affirmatively represented to the court that he or she had no objection to the jury instruction, we will not review the instruction under the manifest injustice exception." *State v. Hamilton,* 2003 UT 22, ¶ 54, 70 P.3d 111. Here, defense counsel affirmatively *proposed* Instruction 24, and we are thus precluded from reviewing it as a manifest injustice.[14] *See id.; State v. Perdue,* 813 P.2d 1201, 1204-06 (Utah Ct.App.1991) ("[T]he act of submitting an instruction to a court of law ... constitutes a representation by the attorney that he or she has read the instruction, waives any objection thereto, and endorses it as legally sound.").

¶ 48 Notwithstanding this preservation problem, the majority opinion concludes that analysis of the wording of Instruction 24 is warranted to avoid a "great and manifest injustice" as discussed in *Robison.*[15] *See* 2006 UT 65, ¶ 25, 147 P.3d 448. I disagree. While I certainly believe that jury instructions, and particularly criminal elements instructions, should accurately state the law, I fail to see how our refusal to consider the issue in this case would result in great or manifest injustice to Johnson.

¶ 49 As noted above, Johnson's trial counsel invited the misworded instruction by submitting it to the trial court. Johnson could have challenged his trial counsel's actions by raising an ineffective assistance of counsel claim in his supplemental briefing, but he failed to do so. Had he done so, he would have borne the high burden of demonstrating both deficient performance by counsel and resulting prejudice. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶ 50 I am not at all sure that the error in the wording of Instruction 24 was prejudicial to Johnson. First and foremost, the flawed instruction still preserved the jury's ability to convict Johnson on the lesser offense if it harbored concerns about the State's case on the greater offense. However, by equating the mens reas for murder and homicide by assault, it also gave the jury the option of convicting Johnson on the lesser offense *even if* it concluded that Johnson knowingly and intentionally killed Decedent. At the same time, Instruction 24 may have increased the likelihood of a complete acquittal by overstating the mens rea required for conviction of the lesser offense.

---

14. I acknowledge that the issue addressed in *State v. Robison,* 2006 UT 65, 147 P.3d 448, was also unpreserved in the trial court, *see id.* ¶ 9, and that the supreme court nevertheless stated it would have been appropriate for this court to consider the issue if the failure to do so would have caused the defendant to suffer a " 'great and manifest injustice,' " *id.* ¶ 25. However, the unpreserved issue in *Robison* was not invited by defense counsel, and *Robison* thus does not obviate the application of the invited error doctrine to allow our consideration of the unpreserved issue in this case.

15. The majority opinion also seems to import the preservation concept of "exceptional circumstances" into the *Robison* analysis, even though that case did not discuss exceptional circumstances as a basis for reaching unargued issues. Whatever the majority's purpose for invoking "exceptional circumstances" may be, I see nothing extraordinary about this case so as to warrant the reversal of Johnson's murder conviction on the unpreserved and unargued jury instruction issue.

¶ 51 In light of these considerations, I am not persuaded that Johnson would have been able to establish ineffective assistance of counsel even if such a claim were properly before us. However, Johnson could still attempt to establish an ineffective assistance of counsel claim on a petition for postconviction relief. The availability of this alternate avenue for relief furthers my conviction that no manifest injustice will result if we properly decline to address the homicide by assault instruction in this direct appeal.

¶ 52 For all of these reasons, I would refrain from considering the jury instruction issue relating to the lesser included offense of homicide by assault. This issue was not preserved below, was invited by Johnson's trial counsel, and was not raised by the parties in their initial appellate briefing. The two issues that Johnson did raise on appeal are without merit. I would therefore affirm Johnson's conviction.