*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 34**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

DAVID CHADWICK,
*Appellant.*

No. 20190818
Heard March 4, 2024
Filed August 15, 2024

On Direct Appeal

Fourth District, Utah County
The Honorable James Taylor
No. 171400984

Attorneys[*]:

Sean D. Reyes, Att'y Gen., William M. Hains, Asst. Solic. Gen.,
Salt Lake City, for appellee

Douglas J. Thompson, Orem, for appellants

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUDGE HALL and JUDGE PARKER joined.

Having recused themselves, JUSTICE HAGEN and JUSTICE POHLMAN
do not participate in this matter; DISTRICT COURT
JUDGE CRAIG HALL and JUDGE RICHARD D. MCKELVIE sat.

DISTRICT COURT JUDGE RICHARD D. MCKELVIE sat for oral
argument in this case but retired on June 1, 2024. DISTRICT COURT
JUDGE PAUL PARKER participated as his replacement.

---

[*] Additional attorneys: Paul Cassell, Heidi Nestel, Crystal
Powell, Salt Lake City, for *amicus curiae* F.L. (limited purpose
party), in support of appellee.

_____

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 David Chadwick challenges the jury's verdict in his case because he believes it violated the Unanimous Verdict Clause of the Utah Constitution. That clause provides that "[i]n criminal cases the verdict shall be unanimous."[1]

¶2 Despite its brevity, the Unanimous Verdict Clause has historically proven difficult to navigate. We have not yet decided a case that has required us to articulate a specific standard identifying when the clause has been violated. We do so in this opinion and hold that the verdict in Chadwick's case violated the Unanimous Verdict Clause.

¶3 Because we vacate Chadwick's conviction on this unanimity ground, we need not decide his other claim regarding the victim's mental health records.

## BACKGROUND

¶4 Two issues are before us in this appeal: (1) whether the jury's verdict was unanimous, and (2) whether the district court erred in refusing to re-examine the victim's mental health records during trial. These issues rest on different but overlapping facts. For clarity, we recount the facts relevant to each issue separately.

### Unanimous Verdict Clause

¶5 In 2016, F.L. accused David Chadwick of repeatedly sexually abusing her when she was between the ages of nine and eleven. F.L. met Chadwick in 1999 when she was nine years old and lived near him in Eagle Mountain. A short time later, F.L., her mother, and her brother moved in with Chadwick, and the family lived with him as their landlord until she was fourteen years old. Based on F.L.'s allegations, Chadwick was charged with four counts of sexual abuse of a child. In the information, Count One was alleged to have occurred "on or about May 1, 1999," and Counts Two through Four were alleged to have occurred "on or about January 1, 2000."

_____

[1] UTAH CONST. art I, § 10.

¶6    At trial F.L. testified that, before her family moved in with Chadwick, he had lived alone. During that time, F.L. stated that she would "[p]retty regularly" play with her friends in Chadwick's basement. When she was in his basement, she would often sit on his lap while he was playing video games or while they were watching a movie. Chadwick acknowledged that F.L. played in his basement but testified that she rarely sat on his lap.

¶7    F.L. testified to two incidents. She stated that the first occurred before she moved in with Chadwick when her mother asked Chadwick to babysit F.L. During that time, Chadwick and F.L. were alone in his basement, and she was sitting on his lap when she felt something hard on her buttocks. She stated that she started to move off his lap, but Chadwick told her, "No, it's okay, you can stay." A short time later, Chadwick asked F.L. if she wanted to play a game. In this "game," which the parties refer to as the "catch-it game," Chadwick would move his penis under his pants and F.L. would try to "catch it." This went on for a few minutes until someone knocked on the door. Chadwick then jumped up and asked F.L. to hide. After answering the door, Chadwick told F.L. not to tell anyone about the game because "they wouldn't understand." In his testimony, Chadwick adamantly denied that the "catch-it game" ever occurred.

¶8    F.L. testified that the second incident occurred after she and her family had moved in with Chadwick. She stated that during that incident, she was sitting on Chadwick's lap in underwear, an oversized t-shirt, and with no pants on, watching a movie. She felt Chadwick take his erect penis out of his pants and rub it "against [her] underwear," on her buttocks and vagina and against her leg. Chadwick stopped when F.L.'s mother came into the room. F.L. thinks that, because of her large shirt, her mother did not see Chadwick's penis. F.L. got up and left soon after that incident.

¶9    In his testimony, Chadwick admitted to getting an erection when F.L. sat on his lap but claimed that it "was just a physical response to the contact" and that he "felt no sexual stimul[us] about it." He also testified that he would move F.L.'s hand if it touched his penis and that he would move her to the side if he got an erection. He admitted that he did sometimes ignore the erection and did not move her, but he claimed she would usually move her hand away from touching it shortly after.

¶10 In addition to these two incidents, F.L. also testified that Chadwick tickled her on various occasions. When Chadwick did so, he would pin F.L. down, straddle her, and tickle her. Sometimes in the process, his hand would "slip" underneath her shirt, and he would touch her breasts and ribcage. He would also "grind his hips" while he tickled her. These tickling episodes stopped when she was eleven, which F.L. attributes to her starting to get angry and telling him to stop. Chadwick admitted to tickling F.L. in his testimony but denied ever touching her breasts. He also denied ever having any sexual contact with F.L.

¶11 Finally, F.L. testified that she told various therapists about these incidents. She explained that she would tell them some parts of the incidents but that she "did not talk about it a lot of the time." She also testified that she told therapists that she could not remember details of the incidents because she did not want to talk about them. The State asked F.L. what the purpose was for going to therapy. F.L. responded that she went to therapy, in part, to process trauma. Defense counsel then asked whether this trauma had come from any other sources. F.L. identified several other sources, including a car accident and witnessing a cow get shot for butchering.

¶12 After both sides rested, each party presented its closing argument. During the State's closing argument, it elected to connect the four counts of sexual abuse to specific conduct: Count One to the "catch-it game"; Count Two to Chadwick rubbing his bare penis on F.L.; and Counts Three and Four to Chadwick tickling F.L.'s breasts.

¶13 During the defense's closing argument, counsel addressed the jury's constitutional duty to return a unanimous verdict. He explained that "[t]here has to be separate conduct on each charge that has to be decided unanimously" and that he "appreciate[d] the State for going through and saying what they're alleging happened for each of the[] counts." Defense counsel then provided an example of unanimity:

> Suppose you get into the jury room and half of you say we believe that the State has proved incident A but not incident B. The other half of you say well, we believe the State has proved incident B but not incident A. What you don't have is a unanimous verdict on one count for a conviction and then not

guilty on the other. What you have in that situation is not a unanimous verdict on either count.

¶14 The judge instructed the jury that "[b]ecause this is a criminal case[] you must all agree to find a verdict." And that "[f]or each count, in order for you [to] find Mr. Chadwick guilty of the offense of sexual abuse of a child you must find beyond a reasonable doubt that by separate and distinct conduct" he engaged in the prohibited act. When listing the charged counts for the jury, the instructions no longer distinguished the counts by date. Instead, all counts were listed as having occurred between May 1999 and January 2000. The court then excused the jury for deliberation.

¶15 Attempting to apply these instructions, the jury asked two questions during its deliberation. First, the jury asked if it "could have a verdict form that specifically identified, in some way, a particular course of conduct to connect to each count." The court's proposed response told the jury that it need only determine how many incidents the State had proven and that the "order of the counts is of no particular consequence." Defense counsel objected to this response and requested that the court "identify for the jury the particular incident for each count." Counsel reasoned that "failure to do so was an invitation for [the jury] to reach a non-unanimous verdict on each incident." The court overruled defense counsel's objection and gave the jury the following answer:

> You should consider the evidence and argument of counsel to determine if the State has or has not proven beyond a reasonable doubt the occurrence of one, two, three, or four behaviors that violate the law as described in the evidence. The order of the counts is of no particular consequence.

¶16 After further deliberations, the jury asked the court to confirm the State's election. It asked whether each count represented the respective incident the State had identified during its closing argument. The court repeated its answer to the first question, then responded as follows:

> Counsel may have suggested specific behaviors to correspond to specific counts during closing argument, but arguments and characterization of the evidence by counsel are neither pleadings nor facts. It is for you to determine from a consideration of all the

> facts if the State has proven beyond a reasonable doubt that the defined statute was violated, in some way, once, twice[,] three time[s], or four times[,] or if the State has failed to meet that burden of proof. You may choose to relate a specific conduct or incident to a particular count to assist your deliberation, but that is up to you. It is your sole province to determine the facts of this case.

Defense counsel did not object to the court's response, but the district court later stated, after addressing preservation on remand from the court of appeals, that defense counsel had already "made an adequate and timely objection" regarding his concern about the jury instructions.

¶17 The jury returned a guilty verdict on Count One and acquitted Chadwick on Counts Two, Three, and Four.

<u>Victim's Mental Health Records</u>

¶18 Before trial, Chadwick asked for access to F.L.'s mental health records, arguing that these records contained relevant prior statements F.L. had made about her interactions with Chadwick. The State initially opposed this request, noting that F.L.'s mental health records were privileged.[2] But the State eventually stipulated to the district court's review of these records *in camera* to identify portions containing either "a factual description of alleged abuse by Mr. Chadwick," or "any report of those events by the counselor to law enforcement, and any methods used to refresh or enhance the memory of the alleged victim regarding these events." After reviewing the therapy records, the court provided Chadwick with the relevant excerpts. The rest of the records, the court ruled, contained no information within the scope of the stipulated purpose.

¶19 At trial, the State asked F.L. whether she had ever gone to therapy to "address . . . any of the incidents that [she had] talked about" during her testimony. F.L. responded that she had. The State asked whether the purpose of seeking therapy was "to process trauma," to which F.L. again responded affirmatively.

¶20 Chadwick then requested that the judge re-review F.L.'s mental health records *in camera* for information regarding the

---

[2] *See* UTAH R. EVID. 506(b).

source of F.L.'s trauma, claiming that the court was "under a continuing obligation to release portions [of the mental health records] that became relevant as the trial progresse[d]." Chadwick justified the request by arguing that the contents of the records were relevant now that the State had asked F.L. about why she went to therapy. The court denied the request, stating that it was not in a "position to have digested the full import of those records."

¶21   Chadwick timely appealed his conviction, and the court of appeals certified this case to us.

## STANDARD OF REVIEW

¶22 Chadwick claims that his conviction violated the Unanimous Verdict Clause of the Utah Constitution. "We review de novo a district court's interpretation of constitutional provisions, granting it no deference."[3]

## ANALYSIS

¶23  Chadwick raises two issues on appeal. First, he contends that the jury's verdict violated the Unanimous Verdict Clause because the jury instructions in his case did not properly instruct the jury regarding its duty to render a unanimous verdict. Second, he challenges the district court's denial of his motion to review the victim's mental health records, arguing that the court had an "ongoing duty" to review the records for facts that became relevant during the proceedings.

¶24  We agree with Chadwick that his conviction violated the Unanimous Verdict Clause. Because we reverse his conviction on that ground, we need not reach the second issue that he raises.[4]

---

[3] *Dexter v. Bosko*, 2008 UT 29, ¶ 5, 184 P.3d 592 (cleaned up).

[4] We note that the relevant rule for establishing an exception to privilege for mental health records, Utah Rule of Evidence 506, has been amended during the pendency of this case. *Compare* UTAH R. EVID. 506 (April 30, 2024) *with id.* (May 1, 2024). Subsection (e) was added in this amendment. That subsection outlines the procedure courts and parties should follow when, as occurred here, one party believes that changed circumstances warrant expanding the scope of an initial disclosure of privileged communications. *See id.* (May 1, 2024). Subsection (e) may instruct the parties on how to address this issue if it arises again.

¶25 Before we can reach the merits of Chadwick's first claim, we must first address the State's argument that this claim is unpreserved. The State contends that, because he did not request a more specific unanimity instruction at trial, Chadwick did not preserve this claim. Chadwick instead requested at trial that the State link particular conduct to each count. This linking is known as prosecutorial election.[5] The State contends that Chadwick cannot now request the different remedy of specific unanimity instructions.

¶26 The State does not dispute that, in accordance with general preservation rules, Chadwick objected to the proposed jury instructions "in such a way that the court ha[d] an opportunity to rule on" his unanimity argument.[6] But, the State continues, preservation requires specificity both as to the issue and the remedy. So, according to the State, if a party requests a new remedy for the same issue on appeal, that remedy is not preserved.

¶27 The State cites *State v. Martin*[7] in support of its argument. But that case is unpersuasive because it is unrelated to preservation, and, even if it were relevant, it is distinguishable.

¶28 In *Martin*, we denied the defendant's request for relief on appeal because he had already received the relief he below.[8] At trial in that case, a witness gave improper testimony.[9] Martin objected to the testimony, asked that it be stricken, and requested curative instructions.[10] The court granted Martin's request.[11] On appeal, Martin claimed that the court erred by not granting him a mistrial instead.[12] We rejected that argument, holding that Martin waived his claim to the remedy of a mistrial when he requested and received relief in the form of the court striking the testimony and

---

[5] *State v. Paule*, 2024 UT 2, ¶¶ 77–78, __ P.3d __.

[6] *See State v. Houston*, 2015 UT 40, ¶ 19, 353 P.3d 55 (cleaned up).

[7] 2017 UT 63, 423 P.3d 1254.

[8] *Id.* ¶¶ 33–34.

[9] *Id.* ¶ 34

[10] *Id.*

[11] *Id.*

[12] *Id.*

giving curative instructions.[13] Because he received the relief he argued to the court would remedy the improper testimony, he could not now claim that he was owed a mistrial.[14]

¶29 But here, Chadwick was denied the relief he requested at trial. He requested that the court confirm to the jury the State's election to connect specific acts of touching to specific counts. But the district court not only rejected that request, it also counteracted the State's election by informing the jury that the order of the counts was of "no particular importance." So, unlike in *Martin*, Chadwick received no remedy, and the error remained unresolved.

¶30 Further, Chadwick objected to the jury instructions "in such a way that the district court ha[d] an opportunity to rule on" the Unanimous Verdict Clause issue.[15] When he requested that the court confirm the State's election in the jury instructions, he argued that "failure to do so was an invitation for [the jury] to reach a non-unanimous verdict on each incident." Incorporating the State's election into the jury instructions would have made that election binding and resolved the unanimity issue.[16] It would have been futile to request a different instruction on the same issue or to object again to an instruction that referred to the previously given and objected-to instruction.[17] The court had the opportunity to rule on Chadwick's objection based on unanimity concerns and overruled that objection. His claim is therefore preserved, and we now reach it on the merits.

## I. THE UNANIMOUS VERDICT CLAUSE

¶31 To merit reversal of a conviction on Unanimous Verdict Clause grounds, a defendant must show that a constitutional error

---

[13] *Id.*

[14] *Id.*

[15] *See id.* ¶ 25 (cleaned up).

[16] *See infra* ¶ 40 (explaining that a unanimity problem arises in multiple-act cases when charges are not linked to specific conduct to support the charge).

[17] *See State v. Ashcraft*, 2015 UT 5, ¶ 33, 349 P.3d 664 (rejecting an argument asking the appellate court to require a more specific objection to preserve an issue).

has occurred and that error must be prejudicial.[18] We begin our analysis by discussing what constitutes error under the Unanimous Verdict Clause, then move to who bears the burden of establishing or refuting prejudice.

¶32   The Unanimous Verdict Clause requires that "[i]n criminal cases the verdict shall be unanimous."[19] A guilty verdict is not unanimous if the jury finds the defendant merely "guilty of some crime."[20] The jury must be unanimous regarding all elements of the crime the defendant is alleged to have committed.[21] When a defendant is charged with multiple offenses with identical or similar elements, unanimity as to the elements requires that the jury be unanimous regarding the specific act supporting the conviction.[22] That much is clear.

¶33   But we have not yet articulated how the jury must be instructed regarding this duty. We have identified circumstances under which the jury instructions were either plainly sufficient or insufficient, but we have not given a yardstick for measuring the constitutionality of a verdict in a Unanimous Verdict Clause challenge based on the form of jury instructions. Because the following two cases serve as useful guideposts in defining a standard, we analyze them here, but we emphasize that they are not dispositive.

¶34   First, in *State v. Saunders*, a plurality opinion, we held that jury instructions that misstated the unanimity requirement were plainly erroneous.[23] The instructions in *Saunders* read: "There is no requirement that the jurors be unanimous about precisely which act occurred or when or where the act or acts occurred. The only

---

[18] *See State v. Rasmussen*, 68 P.2d 176, 183 (Utah 1937) (declining to reverse a conviction under the Unanimous Verdict Clause when no prejudicial error was found).

[19] UTAH CONST. art I, § 10.

[20] *State v. Hummel*, 2017 UT 19, ¶ 27, 393 P.3d 314 (cleaned up).

[21] *State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951 (plurality opinion).

[22] *See State v. Baugh*, 2024 UT 33, ¶ 23, __ P.3d __.

[23] *Saunders* 1999 UT 59, ¶ 65 (plurality opinion).

requirement is that each juror believe, beyond a reasonable doubt, that at least one prohibited act occurred . . . ."[24]

¶35 As another example, in an opinion that addresses the Unanimous Verdict Clause also issued today, we hold that counsel rendered ineffective assistance by failing to request specific unanimity instructions in a multiple-act case where the counts were not linked to specific underlying conduct.[25] In that case, *State v. Baugh*, the defendant was charged with two counts of aggravated sexual abuse of a child.[26] To support those charges, the State presented several instances of touching that could satisfy the touching element of either count.[27] But it did not identify which specific instance of touching supported which count.[28] In that opinion, we reason that instructions informing the jury that it need only be unanimous regarding the verdict did not eliminate potential confusion created by multiple charges to which no specific conduct was attached.[29]

¶36 Part of the reason why we have not yet identified a standard relates to the posture of the cases we have heard regarding the Unanimous Verdict Clause. All relevant cases claiming a violation have been brought either as claims of plain error or of ineffective assistance of counsel.[30] In these cases, the issue before us was whether, for example, it was or should have been obvious to the court that the verdict rendered may have been non-unanimous,[31] or whether declining to request more specific unanimity instructions in the face of low confidence in the unanimity of the verdict was unreasonable.[32] So it has been

---

[24] *Id.* ¶ 65.

[25] *Baugh*, 2024 UT 33, ¶ 53.

[26] *Id.* ¶ 1.

[27] *Id.*

[28] *Id.*

[29] *Id.* ¶¶ 31–40.

[30] *See, e.g.*, *Saunders*, 1999 UT 59, ¶ 56; *State v. Paule*, 2024 UT 2, ¶¶ 64–65, __ P.3d __.

[31] *See, e.g.*, *Saunders*, 1999 UT 59, ¶ 57.

[32] *See, e.g.*, *Paule*, 2024 UT 2, ¶ 64.

unnecessary to articulate a precise standard for Unanimous Verdict Clause violations.

¶37 Each party proposes a standard for our adoption. Chadwick proposes adopting a standard articulated by the court of appeals in *State v. Alires*.[33] In *Alires*, the court of appeals held that in multiple-act cases like Baugh's and Chadwick's, "[w]here neither the charges nor the elements instructions link each count to a particular act, instructing the jury that it must agree as to which criminal acts occurred is critical to ensuring unanimity on each element of each crime."[34]

¶38 The State advocates for a broader and more flexible totality-of-the-circumstances test. It points to other jurisdictions that use such a test, including federal courts, to argue that a flexible standard is best and is applicable in all circumstances. The State's proposed test would "require a specific-unanimity instruction only when the circumstances of the case create a 'genuine risk' of a non-unanimous verdict." When a specific unanimity instruction is necessary but not given, this test would require reviewing courts to consider the totality of the circumstances in each case to determine whether the jury's verdict violated the Unanimous Verdict Clause.

¶39 We believe that the best standard lies somewhere in the middle. We hold that constitutional error occurs when the defendant shows that the circumstances of the case undermine our confidence in the unanimity of the verdict. Because "a non-unanimous verdict has long been viewed as an invalid one,"[35] we require a certain degree of confidence in the verdict. Otherwise, it is constitutionally infirm.

---

[33] 2019 UT App 206, ¶ 23, 455 P.3d 636. Chadwick actually proposes a stricter standard than the court of appeals' because he argues that prosecutorial election—which occurs when the State informs the jury that particular charges relate to particular acts—does not fix a unanimity problem. The court in *Alires* suggested that prosecutorial election could solve a unanimity issue. *Id.* ¶ 22. But election goes to the question of prejudice, not the question of error. *Baugh*, 2024 UT 33, ¶ 37.

[34] *Id.* ¶ 23.

[35] *Hummel*, 2017 UT 19, ¶ 25.

¶40   This raises the question of when the circumstances of a case undermine our confidence in the unanimity of the verdict. We will not attempt to answer that question in its entirety. But there are some circumstances that we can identify that inherently undermine our confidence in the unanimity of the verdict. Multiple-act cases in which the counts charged are identical and the counts are not linked to specific underlying conduct are one such set of circumstances. In these cases, general unanimity instructions, which merely instruct the jury that it must be unanimous as to the defendant's guilt, leave room for confusion.

¶41   In a multiple-act case where specific conduct is linked to each count, a general instruction that the jury must be unanimous as to the defendant's guilt does not typically cause us to doubt the unanimity of a verdict. To illustrate those circumstances that give us confidence—or undermine it—in the unanimity of a verdict, consider the following hypothetical. A defendant is charged with two counts of criminal trespass. The jury instructions identify two occasions on which the defendant allegedly entered the property at issue. The instructions connect the first count of trespass to entry onto the property on a Saturday. They connect Count Two to entry on a Sunday. The jury is instructed only that it must be unanimous as to the guilt of the defendant and the elements of the crime. The jury convicts on the first count and acquits on the second.

¶42   Under this hypothetical, because we presume that a jury follows the instructions given,[36] we are confident that the jury was unanimous regarding the underlying conduct supporting Count One. It was specifically instructed that entry onto the property on Saturday supported Count One. And the jury was instructed that it needed to be unanimous regarding the defendant's guilt. A reasonable jury would not take those instructions to mean that it did not have to agree that the defendant entered the property on Sunday to convict on Count One. Our confidence in the unanimity of the verdict is not undermined.

---

[36] *See State v. Harmon*, 956 P.2d 262, 272 (Utah 1998) (plurality opinion) ("[O]ur judicial system greatly relies upon the jury's integrity to uphold the jury oath, including its promise to follow *all* of the judge's instructions."); *State v. Suhail*, 2023 UT App 15, ¶ 142, 525 P.3d 550 ("Jurors are presumed to have followed a trial court's instructions." (cleaned up)).

¶43 Now, alter the hypothetical slightly. Instead of attaching specific conduct to each count, the jury instructions merely list two counts of criminal trespass without identifying conduct to support each count. The State presents evidence of two occasions of entry: one on a Saturday and one on a Sunday. The jury is given the same instructions as the previous hypothetical and likewise convicts on Count One and acquits on Count Two.

¶44 Under these circumstances, our confidence in the unanimity of the verdict is far lower. The jury, having been instructed that it must agree on the defendant's guilt and the elements of the crime, could interpret its instructions to permit "mixing and matching" conduct to support its verdict. If six jurors believe that only entry on Saturday occurred, but the other six believe that only entry on Sunday occurred, a reasonable jury could believe that it had achieved unanimity as to the entry element. And if the jury found that the State had proven all other elements of the crime, it could reasonably believe it was unanimous as to the defendant's guilt.

¶45 Accordingly, our confidence in the unanimity of a verdict is low in multiple-act cases when the defendant is charged with multiple counts of the same crime and the jury instructions do not connect a particular act to each count. Under those circumstances, we require that the jury be specifically instructed that it must be unanimous regarding both the conduct supporting conviction on each count and the defendant's guilt. Examples of what a specific unanimity instruction includes can be found in Criminal Model Utah Jury Instructions 431 and 432.[37]

---

[37] Instruction 431, pertaining to when a defendant is charged with multiple offenses with identical elements, reads:

> The prosecution has charged in Count (#) through Count (#) that (DEFENDANT'S NAME) committed (CRIME) multiple times. Although each of these counts has similar or identical elements, you must consider each count separately and reach unanimous agreement on whether (DEFENDANT'S NAME) is guilty or not guilty of each individual count. You may not find the defendant guilty of any count unless you unanimously agree the prosecution has proven the

(continued . . .)

¶46 But concluding that a lack of specific unanimity instructions was error is not the end of the analysis. We do not reverse a conviction unless a violation of the Unanimous Verdict Clause was prejudicial.[38]

---

> specific act in the elements of the offense for each count AND you unanimously agree the prosecution has proven all other elements of the count. You may find the defendant guilty of all of these counts, none of these counts, or only some of these counts; but for each count your decision must be unanimous.
>
> In this case:
>
> Count (#) is based on the alleged conduct of (INSERT SPECIFIC CONDUCT AND OCCASION).
>
> Count (#) is based on the alleged conduct of (INSERT SPECIFIC CONDUCT AND OCCASION).
>
> [Count (#) is based on the alleged conduct of (INSERT SPECIFIC CONDUCT AND OCCASION).]

Instruction 432, treating circumstances in which the prosecution presents evidence of more occurrences than counts that are charged, reads:

> The prosecution has charged in Count (#) through Count (#) that (DEFENDANT'S NAME) committed (CRIME). Evidence was introduced that (DEFENDANT'S NAME) may have committed (CRIME) more times than the number of charged counts. When determining whether (DEFENDANT'S NAME) committed (CRIME), you must be unanimous as to which occasion and which act (DEFENDANT'S NAME) committed for each count, and that the prosecution has proven all the elements for that count. You may find (DEFENDANT'S NAME) guilty of all these counts, none of these counts, or only some of these counts; but for each count your decision must be unanimous.

[38] *See State v. Rasmussen*, 68 P.2d 176, 183 (Utah 1937).

## II. THE PREJUDICE ANALYSIS FOR A UNANIMOUS VERDICT CLAUSE ERROR

¶47 There are three categories of standards for proving prejudice. First, some constitutional errors in criminal cases constitute per se prejudice.[39] This standard is reserved for structural errors, which are defects that affect "the framework within which the trial proceeds."[40] Examples of structural errors include "the complete denial of counsel at a critical stage of a criminal proceeding, racial discrimination in jury selection, lack of an impartial trial judge, denial of the right to a public trial, and the failure to instruct the jury on the basic elements of an offense."[41]

¶48 Second, other constitutional errors carry a presumption of prejudice that may be rebutted if the State proves that the error was harmless beyond a reasonable doubt.[42] This standard applies to most federal constitutional errors.[43] We have not yet addressed whether this standard applies to constitutional errors in criminal cases under the Utah Constitution.[44] But we have applied this standard to specific violations of the Utah Constitution in criminal cases, such as improper jury contact—a violation of article I, section 12 of the Utah Constitution.[45] This category acts as a catch-all for errors that do not fall under the first or third categories.

¶49 The third class of constitutional errors requires that the defendant establish prejudice.[46] This standard is typically applied

---

[39] *State v. Reece,* 2015 UT 45, ¶ 34, 349 P.3d 712.

[40] *Id.* (cleaned up).

[41] *Id.* (cleaned up).

[42] *See, e.g., State v. Soto,* 2022 UT 26, ¶¶ 31–32, 38, 513 P.3d 684 (holding that improper jury contact, a violation of article I, section 12 of the Utah Constitution, carries a rebuttable presumption of prejudice).

[43] *See Chapman v. California,* 386 U.S. 18, 24 (1967).

[44] *State v. Lovell,* 2024 UT 25, ¶ 50 n.15, __ P.3d __.

[45] *Soto,* 2022 UT 26, ¶ 38.

[46] *See, e.g., State v. Gallegos,* 2020 UT 19, ¶ 63, 463 P.3d 641 (explaining that, for ineffective assistance of counsel claims, which are claims of a violation of the Sixth Amendment of the United

(continued . . .)

to unpreserved claims of error[47] and ineffective assistance of counsel claims.[48] Unpreserved claims of error are claims that could or should have been brought at trial but were instead raised for the first time on appeal.[49] Ineffective assistance of counsel claims are also typically brought for the first time on appeal. Because these challenges claim that the defendant's trial counsel was ineffective, and a trial attorney is unlikely to raise a claim of ineffective assistance against themselves, ineffective assistance of counsel claims are not typically brought during trial.[50] In sum, the third class is generally reserved for a category of claims brought for the first time on appeal.

¶50 Chadwick and the State disagree on which category applies to Unanimous Verdict Clause errors. Chadwick believes that these errors fall within the second category. The State argues that they fall within the third. We agree with Chadwick.

¶51 Chadwick argues that our caselaw dictates that constitutional error carries a presumption of prejudice that the State may rebut by proving that the error was harmless beyond a reasonable doubt.[51] The State counters by pointing out that the "harmless beyond a reasonable doubt" standard for constitutional errors in criminal cases has been applied only with respect to federal constitutional errors rather than state constitutional errors and that any application under the Utah Constitution has not been across the board.[52] And the State asserts that "[w]ithout a

---

States Constitution, "[t]he defendant generally has the obligation to affirmatively prove prejudice" (cleaned up)).

[47] *State v. Bond*, 2015 UT 88, ¶¶ 43, 46–47, 361 P.3d 104.

[48] *Gallegos*, 2020 UT 19, ¶ 63.

[49] *See O'Dea v. Olea*, 2009 UT 46, ¶ 18, 217 P.3d 704.

[50] *See Massaro v. United States*, 538 U.S. 500, 502–03 (2003) ("[A]n attorney . . . is unlikely to raise an ineffective-assistance claim against himself.").

[51] (Citing *Soto*, 2022 UT 26.)

[52] (Citing *id.* ¶¶ 19–31.)

presumption of prejudice, [Chadwick] must show harm in order to prevail on his claim."[53]

¶52 The State is correct that we have not held that constitutional errors under the Utah Constitution carry a presumption of prejudice across the board. But that does not prevent us from applying the standard to Unanimous Verdict Clause errors now.

¶53 Unanimous Verdict Clause errors fit best under the second category: the rebuttable presumption. Neither party suggests that a non-unanimous verdict is a structural error. We agree. So we can readily dispose of that category.

¶54 Likewise, we can dispose of the third category rather handily. Chadwick's Unanimous Verdict Clause error was preserved.[54] And a unanimity error is not the type of error that, by its nature, cannot be brought for the first time before a district court. Chadwick could, and did, raise an objection during trial.

¶55 The second category is the Goldilocks category for Unanimous Verdict Clause errors. That category acts as a catch-all for most constitutional errors that do not fit the other two categories. And as we explained above, unanimity errors do not fit the other two categories. Further, in one instance, *State v. Soto*, we applied the rebuttable presumption of prejudice to an error under the Utah Constitution.[55] And much of our reasoning from that case still resonates when applied to unanimity errors. In *Soto*, we held that the presumption of prejudice applies to a constitutional error of improper jury contact.[56] We reasoned that the right to a fair trial means that jury verdicts must "be above suspicion" of influence.[57]

¶56 Likewise, the right to a unanimous verdict implicates the right to a fair trial as well as an explicit constitutional guarantee.[58] Indeed, we have noted that "a non-unanimous verdict has long

---

[53] (Quoting *State v. Maestas*, 2012 UT 46, ¶ 71, 299 P.3d 892.)

[54] *See supra* ¶ 30.

[55] 2022 UT 26, ¶ 32.

[56] *Id.* ¶ 31.

[57] *Id.* ¶ 33 (cleaned up).

[58] *See* UTAH CONST. art I, § 10.

been viewed as an invalid one."[59] And when a jury cannot agree on a verdict, the consequence is so serious that "the result is a mistrial."[60] So, as with confidence in an impartial jury, confidence in the unanimity of a guilty verdict is essential. And it is a serious constitutional concern when the circumstances of the case undermine our confidence in the unanimity of a verdict; attaching a rebuttable presumption is an appropriate safeguard.

¶57 We thus adopt the standard that a presumption of prejudice attaches to a constitutional error under the Unanimous Verdict Clause.[61] The State may rebut this presumption by showing that the error was harmless beyond a reasonable doubt. "In other words, the side which benefited by the error (the prosecution) must show beyond a reasonable doubt that the error did not contribute to the verdict (or sentence) obtained."[62]

### A. The Jury's Verdict Violated the Unanimous Verdict Clause

¶58 We now apply the above principles to Chadwick's case. We begin by analyzing whether the circumstances of Chadwick's case undermine our confidence in the unanimity of the verdict. Because this case falls under the bright-line rule that we articulated previously,[63] the decision not to give a specific unanimity instruction was constitutional error.

¶59 Chadwick was charged with four counts of sexual abuse of a child. The charges did not connect any of the acts the State presented evidence of at trial to a particular count. Nor did the jury instructions connect a particular act to a count. And the jury did not receive specific unanimity instructions. It was instructed only that it must "find beyond a reasonable doubt that by separate and

---

[59] *State v. Hummel*, 2017 UT 19, ¶ 25, 393 P.3d 314.

[60] *Id.*

[61] We are not swayed from this position by the State's argument that we have required the defendant to prove prejudice in *Hummel*, another Unanimous Verdict Clause case, and should do so again here. *Id.* ¶¶ 81–85. In that case, we held that there was no Unanimous Verdict Clause error. *Id.* ¶¶ 57, 65. So whatever standard we applied there is inapplicable here.

[62] *Soto*, 2022 UT 26, ¶ 90 (cleaned up).

[63] *See supra* ¶ 45.

distinct conduct" Chadwick committed the crimes in question. But this instruction is not a specific unanimity instruction, because it informed the jury only that it must unanimously agree that Chadwick touched F.L. between zero and four times. It did not instruct the jury that it must unanimously agree on which instance of touching supports each count on which it finds Chadwick guilty.

¶60   We now turn to the question of prejudice. The State argues that this error did not prejudice Chadwick because, under the circumstances of the case, the jury would have understood that its duty to be unanimous on the verdict extended to agreeing on the conduct that supported each count. To demonstrate its point that the jury would not have been confused regarding its unanimity duty, the State emphasizes that the jury was told that "each count had to be supported by separate and distinct conduct." And in closing argument, the State continues, defense counsel pointed to the elements instruction and explained clearly that a verdict is not unanimous if the jurors disagree on the conduct that supports the act. So, the State concludes, even if the instructions could have been clearer, the jury could not reasonably have been confused after defense counsel correctly and clearly defined unanimity for them.

¶61   We disagree. The instruction that each count must be supported by "separate and distinct conduct" indicated to the jury that it could not use the same conduct to support two counts. But it did not preclude the jury from using two separate instances of touching to support the same count. And because the jury found Chadwick guilty of only one count, the risk of error is heightened. The jury could have found Chadwick guilty because some jurors believed that Chadwick was only guilty of one of the underlying acts, like the "catch-it game," while others believed he was only guilty of another act, like inappropriately tickling F.L.

¶62   Adding to our concern, the explanation of unanimity that defense counsel gave during closing argument does not support a conclusion that the verdict was unanimous beyond a reasonable doubt. The jury was instructed that it could "accept or reject" statements made during closing arguments. The jury was also told that the only law it had to follow would be included in the jury instructions. So while we agree with the State that defense counsel's statements may have helped, they do not solve the problem that the previously described aspects of the case created.

¶63 And the jury's questions support the idea that the jury did not treat the defense's definition of unanimity as binding. The jury twice asked which conduct supported which count. One interpretation of the jury's questions is that if the jury found Chadwick guilty on only one count, it believed that it mattered whether it found Chadwick guilty on Count Three rather than Count One. Another interpretation is that the jury was uncertain whether it needed to agree on or identify which conduct supported each count.

¶64 The court's response to the jury's questions likely made matters worse. The jury was told twice in response to its questions that it need only determine the *number* of counts of which it found Chadwick guilty. Emphasizing that the number of violations— rather than the specific conduct—was most important left room for the jury to disregard the defense's definition of unanimity and proceed under the understanding that it need only agree on the number of times that Chadwick was guilty of a crime.

¶65 Finally, the State argues that the evidence against Chadwick was so overwhelming that it is "clear beyond a reasonable doubt that a jury would not have reached a more favorable verdict had it been given a specific-unanimity instruction." The State reasons that F.L.'s testimony was detailed, "clear[,] and largely consistent." And, the State adds, on cross-examination of F.L., Chadwick "pointed to only two potential inconsistencies" in her testimony: that F.L. told the detective that his penis never touched her leg and that she told a therapist that she could not remember details of the abuse. The State argues that F.L. "easily explained" those discrepancies during her re-direct examination, and as a result, her testimony went largely uncontroverted.

¶66 But the evidence was clearly not as overwhelming as the State claims, given that the jury acquitted Chadwick of three of the four counts charged against him. The jury was convinced to some degree by Chadwick's insistent denial of having sexually touched F.L. And F.L.'s testimony on each alleged conduct was not more overwhelming for one than the other. She was as detailed in her description of the "catch-it game" as she was in her description of Chadwick rubbing his penis on her leg. Because the evidence for each claim was both overlapping and equally matched, the odds are reduced that the jury would have been overwhelmingly convinced that Chadwick was guilty of one count but not the

others. And in the inverse, the odds are increased that the jury may have tried to reach a compromise by arriving at a non-unanimous, consensus decision.

¶67  Because the State has not proven beyond a reasonable doubt that the outcome of the trial would not have been different without the error, the presumption of harm stands. We hold that not giving the jury specific unanimity instructions prejudiced Chadwick. We therefore vacate Chadwick's conviction.

## CONCLUSION

¶68  The district court erred in failing to instruct the jury that it must unanimously agree on the conduct that supported each count of Chadwick's charged crimes. As a result, the jury's verdict violated the Unanimous Verdict Clause and prejudiced Baugh, and we vacate Chadwick's conviction.

_____