*This opinion is subject to revision before final publication in the Pacific Reporter*

**2026 UT 6**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICHAEL WADDELL JOHNSON,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20230715
Heard October 15, 2025
Filed March 26, 2026[*]

On Direct Appeal

Third District Court, Salt Lake County
The Honorable Linda M. Jones
No. 190906447

Attorneys:

Dain Smoland, Ian Quiel, Benjamin Miller, Debra M. Nelson, Salt Lake City, for appellant

Derek E. Brown, Att'y Gen., Daniel L. Day, Asst. Solic. Gen., Salt Lake City, for appellee

JUSTICE HAGEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, ASSOCIATE CHIEF JUSTICE POHLMAN, and JUDGE HANSEN joined.

Due to his retirement, JUSTICE PEARCE did not participate herein; DISTRICT COURT JUDGE MATTHEW J. HANSEN sat.

---

[*] As of January 31, 2026, "The Supreme Court consists of seven justices." UTAH CODE § 78A-3-101(1). Pursuant to Utah Supreme Court Standing Order No. 18, this court sat and rendered judgment in this matter as a division of five justices.

JUSTICE NIELSEN became a member of the Court after oral argument in this matter and accordingly did not participate.

———————

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1    A jury found petitioner Michael Johnson guilty of murder. At his trial, Johnson requested a lesser-included-offense instruction for homicide by assault. But the instruction, which Johnson's trial counsel proposed and approved, misstated the mens rea element for that offense. On direct appeal to the court of appeals, Johnson did not claim that his counsel rendered ineffective assistance by proposing the erroneous jury instruction nor did he claim that the trial court committed plain error by giving the instruction. Yet, the court of appeals reached the issue on its own initiative, applying the exceptional circumstances exception to preservation. It then held that the instructional error was prejudicial and reversed Johnson's conviction. On certiorari review, we reversed, holding that the court of appeals erred by applying the exceptional circumstances exception. We made no express statement regarding the effect our reversal had on the court of appeals' ruling that the error in the instruction was prejudicial, but we made clear that the court of appeals should not have reached the issue.

¶2    Johnson then petitioned for postconviction relief, arguing that his trial and appellate counsel were constitutionally ineffective for failing to challenge the erroneous jury instruction. Applying the *Strickland* standard, the district court determined that Johnson's counsel rendered deficient performance. But the court concluded that Johnson failed to show that he was prejudiced by the error and dismissed his petition.

¶3    In this appeal, Johnson argues that because our decision reversing the court of appeals in Johnson's direct criminal appeal did not address the issue of prejudice, the portion of the court of appeals' opinion analyzing prejudice retains precedential value and the district court was bound to follow it. Johnson also argues that, even if the court of appeals' earlier prejudice ruling was not binding, the district court's decision that Johnson failed to show prejudice was incorrect on the merits.

¶4    We hold that our decision reversing the court of appeals' decision in Johnson's criminal case necessarily vacated the court of appeals' ruling on prejudice. Accordingly, the district court had no

obligation to follow or defer to that decision. Additionally, we agree with the district court that Johnson failed to establish the prejudice element for ineffective assistance of counsel. Therefore, we affirm.

## BACKGROUND

¶5 The State charged Johnson with one count of murder. The State advanced two theories of intent to support the murder count—intentional murder and depraved indifference murder, both first-degree felonies. Johnson's trial counsel also requested an instruction on a lesser included offense, homicide by assault, which the district court gave the jury at the end of the trial. The jury ultimately convicted Johnson on the more serious offense of intentional murder.[1] *State v. Johnson* (*Johnson I*), 2014 UT App 161, ¶ 9, 330 P.3d 743, *rev'd*, 2017 UT 76, 416 P.3d 443.

¶6 The present case centers on an erroneous instruction given to the jury. A key issue at Johnson's trial was the victim's cause of death. *Id.* ¶¶ 5–8. There was conflicting evidence on whether the victim's "physical injuries were caused by a fall, an altercation, or strangulation and whether she died primarily as a result of the mixture of alcohol and cocaine in her system or from strangulation." *Id.* ¶ 5. Neither the State's nor Johnson's expert could give a definitive answer as to the cause of death. *Id.* ¶¶ 6–8. Based on this evidence, Johnson requested a lesser-included-offense instruction for homicide by assault. But the instruction submitted to the jury incorrectly stated that homicide by assault requires a finding that the defendant caused the death intentionally or knowingly. *Id.* ¶¶ 9, 21–22. The instruction read:

> Before [the jury] can convict [Johnson] of the crime of Homicide by Assault, [the jury] must find from all of the evidence, beyond a reasonable doubt each and every one of the following elements of that offense:
>
> > (1) That . . . [Johnson] . . . under circumstances not amounting to aggravated murder, murder, or manslaughter, caused the death of [the victim];

---

[1] Our decision today does not turn on the facts of Johnson's crime, which have been detailed in prior opinions. *See Johnson I*, 2014 UT App 161, 330 P.3d 743; *State v. Johnson* (*Johnson II*), 2017 UT 76, 416 P.3d 443.

(2) And that he did so intentionally or knowingly while attempting, with unlawful force or violence, to do bodily injury to [the victim].

¶7 If the word "while" had been placed before "intentionally and knowingly," the instruction would have correctly stated that homicide by assault requires only a finding that a defendant "intentionally or knowingly attempted, with unlawful force or violence, to do bodily injury to another." *Id.* ¶ 22 (cleaned up). But by "separating the 'intentionally and knowingly' elements from the act of assault," the instruction incorrectly told the jury that for "Johnson to be convicted of the lesser included offense, it must find that Johnson 'intentionally and knowingly' 'caused the death of'" the victim. *Id.* (cleaned up).

¶8 Johnson's trial counsel did not merely fail to object to the erroneous lesser-included-offense instruction; he proposed the botched wording. *See id.* ¶ 14. The district court, for its part, did not notice the error and instructed the jury as Johnson's counsel requested. *Id.* ¶ 9.

¶9 After he was convicted of the greater offense of intentional murder, Johnson appealed but did not challenge the lesser-included-offense instruction. *See id.* ¶¶ 11–12. Nor did he argue that his trial counsel was constitutionally ineffective for requesting the erroneous instruction. *See id.* The court of appeals, however, noticed the error sua sponte and asked the parties for supplemental briefing on the issue. *Id.* ¶¶ 12–13. Despite the preservation, waiver, and invited error issues, a majority of the court of appeals' panel determined that it could address the erroneous jury instruction through the exceptional circumstances exception. *Id.* ¶¶ 14–19; *see also id.* ¶ 33 (Roth, J., concurring).

¶10 The court then proceeded to analyze the prejudicial effect of the error. *See id.* ¶¶ 24–27 (majority opinion). The court reasoned that the misstatement of the mens rea made the crime of homicide by assault indistinguishable from the greater offense of murder, thereby depriving Johnson of the benefit of a lesser-included-offense instruction. *Id.* ¶ 27. The court concluded that the error was prejudicial and reversed Johnson's conviction. *Id.* ¶¶ 24–27.

¶11 This court then granted certiorari to review "whether the majority of the panel of the court of appeals erred in its application of the exceptional circumstances doctrine to a case in which it acknowledged the error may have been invited and in which

[Johnson] did not argue ineffective assistance of counsel." *Johnson II*, 2017 UT 76, ¶ 5, 416 P.3d 443 (cleaned up). We concluded that the court of appeals erred in raising the issue of the erroneous jury instruction on its own initiative. *Id.* ¶¶ 54–62. We reversed and remanded the case to the court of appeals to consider the remaining issues that *Johnson I* did not resolve. *Id.* ¶ 63. On remand, the court of appeals upheld Johnson's conviction in an order of summary affirmance.

¶12 Having exhausted his direct appeal, Johnson petitioned for postconviction relief, arguing that his trial and appellate counsel were ineffective for failing to raise the issue of the erroneous jury instruction. In its written ruling, the district court concluded that Johnson's trial and appellate counsel provided deficient performance under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984). But the court ruled that Johnson failed to establish the second prong of prejudice. The court reasoned that Johnson could not show prejudice because he had not challenged the instruction's statement of the first element. The first part required the jury to find that the death was caused under circumstances "not amounting to . . . murder." The court interpreted the instruction to require "the jury first [to] eliminate murder as an option" before proceeding to the second part. Because the jury found Johnson guilty of murder, the court reasoned that "the jury did not eliminate murder" as the first part required and therefore could not have reached the second part. Accordingly, the court concluded that "Johnson cannot establish that a flawed mens rea element resulted in prejudicial error." Because Johnson failed to establish both prongs of *Strickland*, the court dismissed the petition.

¶13 Johnson appeals that decision. Our court initially transferred the appeal to the Utah Court of Appeals, *see* UTAH R. APP. P. 42(a), before vacating the transfer order and recalling the appeal.

## STANDARD OF REVIEW

¶14 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Gardner v. State*, 2010 UT 46, ¶ 55, 234 P.3d 1115 (cleaned up).

## ANALYSIS

¶15 In his petition for postconviction relief, Johnson argues that his trial and appellate counsel were ineffective for failing to raise the issue of the erroneous jury instruction. "Ineffective assistance of counsel is both an exception to the PCRA's procedural bar and an independent constitutional claim." *Newton v. State*, 2025 UT 50, ¶ 34. For claims of ineffective assistance of counsel, we follow the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350. Under that standard, a party claiming ineffective assistance must show: (1) "counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'" and (2) "'the deficient performance prejudiced the defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 687–88). The district court concluded that Johnson had shown deficient performance, but that he had not established prejudice.

¶16 Johnson challenges the latter conclusion for two reasons. First, he argues that the district court was bound to follow the court of appeals' analysis in *Johnson I.* He contends that because this court's decision in *Johnson II* did not address the issue of prejudice, the court of appeals' prejudice analysis from *Johnson I* retains precedential value and the district court was required to follow it. Second, Johnson argues that, even if the court of appeals' decision in *Johnson I* was not binding, the district court's decision that he failed to show prejudice was incorrect on the merits.[2] He claims that he was deprived of the benefit of a lesser-included-offense instruction because the second part of the instruction conflated the mens rea for the lesser offense with the greater offense. And, he contends, it was error for the district court to rely on the first part of the instruction to conclude that he was not prejudiced by the error in the second part.

¶17 On the first argument, we conclude that our decision in *Johnson II* necessarily vacated the court of appeals' ruling on prejudice in *Johnson I.* Because that ruling had no continuing precedential effect, the district court had no obligation to adopt or defer to the court of appeals' prejudice analysis. On the second

---

[2] The State also raised an alternative basis for affirming the district court on the ground that Johnson failed to prove deficient performance of his appellate counsel. Because we affirm on prejudice, we do not address this argument.

argument, we agree with the district court that Johnson failed to establish prejudice because the unchallenged first part of the instruction required the jury to rule out conviction on the greater offense before convicting on the lesser. Accordingly, we affirm the denial of Johnson's petition.

## I.  PRECEDENTIAL EFFECT OF *JOHNSON I*

¶18  Johnson contends that because "*Johnson I* was reversed on other grounds," "the unquestioned portions of [that] opinion" retain precedential value. Johnson points out that the court of appeals applied a prejudice standard for manifest injustice that was "indistinguishable from the prejudice standard in the [ineffective assistance of counsel] context" and ruled that Johnson was indeed prejudiced by the erroneous instruction. Because the court of appeals, in essence, "already applied the same facts to the same legal standard," Johnson argues that the district court's failure to defer to or follow *Johnson I*'s conclusion that the jury instruction was prejudicial "violate[d] important *stare decisis* principles."

¶19  In support of this argument, Johnson points to examples in our caselaw where we have cited cases as binding precedent where the cases had been "reversed on other grounds" unrelated to the cited proposition. And he points to examples from other jurisdictions where a higher court reversed a lower court decision on a particular point but left other portions of the lower court's decision intact.

¶20 While Johnson is correct that unaddressed rulings are normally unaffected by a reversal on other grounds, a ruling that is vacated retains no precedential effect. *See O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect . . . ."). A careful reading of *Johnson II* shows that it had the effect of vacating the court of appeals' decision on prejudice in *Johnson I.*

¶21  As a general rule, a decision of a higher court reversing a lower court decision "in part" leaves the lower court's decision on other issues "intact." *See Stein v. Home-Owners Ins.*, 843 N.W.2d 780, 783 (Mich. Ct. App. 2013). But that is not always the case. Sometimes, the issue on which a decision is reversed precludes a court from reaching the merits of subsequent issues. Such predicate issues include jurisdiction, preservation and waiver, or issues of justiciability. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all

in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (cleaned up)); *Poe v. Ullman*, 367 U.S. 497, 508–09 (1961) (declining to reach the merits of a constitutional issue because it was not ripe for consideration under the federal constitution); *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶ 40, 289 P.3d 582 (noting that the matter had been mooted and thus the court could not consider the appeal). When a decision is reversed on a predicate ground, the lower court's ruling on the merits is necessarily vacated—even if the higher court does not expressly say so.

¶22  That is the case here. The court of appeals in *Johnson I* determined that the lesser-included-offense instruction misstated the mens rea of the offense of homicide by assault and that the error prejudiced Johnson. 2014 UT App 161, ¶¶ 20–27, 330 P.3d 743, *rev'd*, 2017 UT 76, 416 P.3d 443. But because that issue had not been preserved or raised by the parties on appeal, the court of appeals' ability to reach that issue depended on whether the exceptional circumstances exception to preservation applied. *See id.* ¶ 14. The court of appeals concluded that it did and therefore proceeded with its analysis and ultimately concluded that the error was prejudicial. *Id.* ¶¶ 18–19, 27.

¶23  In *Johnson II*, we granted certiorari to answer "whether the majority of the panel of the court of appeals erred in its application of the exceptional circumstances doctrine to a case in which it acknowledged the error may have been invited and in which [Johnson] did not argue ineffective assistance of counsel."[3] 2017 UT 76, ¶ 5, 416 P.3d 443 (cleaned up). We concluded that the court of appeals did err in applying the exceptional circumstances exception. *Id.* ¶ 63. We thus reversed on that issue and remanded

---

[3] At oral argument Johnson indicated that when the State petitioned this court for review of *Johnson I* it also asked us to review "the underlying prejudice issue as well as the procedural issue of whether it was appropriate to reach it sua sponte" under the exceptional circumstances exception. And because we declined to do so, Johnson suggests that "we can read something into [our] original decision" to not address prejudice. We disagree. An order from this court denying a petition for certiorari in part or in whole is not an endorsement of the underlying decision.

the case for consideration of other issues not addressed by the court of appeals. *Id.*

¶24 We were less than precise about the effect of our decision on the other portions of the *Johnson I* opinion. But our holding that the court of appeals should have never reached the merits necessarily vacated the prejudice analysis in *Johnson I*. The court of appeals' ability to reach that issue was predicated upon its conclusion that the exceptional circumstances exception applied. Because we held that the exceptional circumstances exception did not apply, the court of appeals necessarily erred in addressing the jury instruction error at all. Indeed, we expressly stated that "[o]ur preservation and waiver doctrines, and the demands for procedural regularity, precluded the court of appeals from reviewing the jury instruction." *Id.* ¶ 62.

¶25 Because the court was precluded from reviewing the jury instruction, any decision on that issue was necessarily vacated by *Johnson II*. And because that portion of *Johnson I* was vacated, it had no binding effect on the district court. *See O'Connor*, 422 U.S. at 577 n.12. The district court was under no obligation to follow the court of appeals' analysis or adopt its reasoning, and it therefore properly conducted its own independent analysis of prejudice.

## II. DISTRICT COURT'S RULING ON JOHNSON'S PCRA PETITION

¶26 Johnson argues that even if "the district court owed no deference" to *Johnson I*, it nevertheless erred on the merits when it concluded that Johnson had not established the prejudice prong of *Strickland*. But it concluded that Johnson failed to establish the prejudice prong because the unchallenged first part of the lesser-included-offense instruction required the jury to eliminate the option of the greater offense of murder before it could convict for the lesser included offense.

¶27 The prejudice prong requires the petitioner to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability that the result would have been different exists when petitioner's proof is 'sufficient to undermine confidence in the outcome.'" *Newton v. State*, 2025 UT 50, ¶ 34 (quoting *Strickland*, 466 U.S. at 694). And the Supreme Court stated in *Strickland* that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

¶28 For purposes of this case, we assume without deciding that the district court correctly concluded both that Johnson's trial counsel rendered deficient performance by proposing an erroneous jury instruction and that Johnson's appellate counsel rendered deficient performance on appeal by failing to raise the issue under the ineffective assistance of counsel exception to preservation. But we agree with the district court that Johnson cannot establish "a reasonable probability that the result would have been different" absent the error.

¶29 Where a defendant claims ineffective assistance of counsel "in the context of erroneous jury instructions," he must show "a reasonable probability the jury would not have convicted" if the "instructions had been correct." *State v. Grunwald*, 2020 UT 40, ¶ 22, 478 P.3d 1. The district court ruled that Johnson had not made that showing because the first part of the lesser-included-offense instruction required the jury to find that the offense was committed under circumstances not amounting to murder. Because the jury found that Johnson's offense did amount to murder, the jury would never have reached the second part of the instruction that contained the misstated mens rea. Therefore, the district court concluded that the error had no reasonable probability of affecting the outcome. We agree. Appellate courts ordinarily presume that juries, properly instructed, follow the instructions given to them. *State v. Chadwick*, 2024 UT 34, ¶ 42, 554 P.3d 1098; *see also State v. Suhail*, 2023 UT App 15, ¶ 142, 525 P.3d 550. Because Johnson has not challenged the first part of the instruction, we presume that it was proper and the jury followed it.

¶30 As written, the first part of the instruction required the jury to find that Johnson, "under circumstances not amounting to aggravated murder, murder, or manslaughter, caused the death of [the victim]." Thus, under the unchallenged wording of the first part of the instruction, the jury could not convict on the lesser included offense unless it found that the circumstances did not amount to the greater offense of murder.

¶31 When assessing prejudice, this court conducts a counterfactual analysis. *Ross v. State*, 2019 UT 48, ¶ 76, 448 P.3d 1203. We consider a situation in which the error did not occur and ask whether there is a reasonable probability that the result would have been different in that scenario. *Id.* ¶¶ 76–77. Here, we can assess prejudice by imagining the hypothetical situation where the second part of the jury instruction correctly stated the mens rea,

that is, that the defendant caused the death "while intentionally or knowingly attempting, with unlawful force or violence, to do bodily injury to another." *Johnson I*, 2014 UT App 161, ¶ 22, 330 P.3d 743, *rev'd*, 2017 UT 76, 416 P.3d 443 (cleaned up). But assuming, as we must, that the jury followed its instructions, it would still be precluded from convicting Johnson on the lesser included offense. Under the first part, it was required to find that the death was caused under circumstances not amounting to murder. Because the jury found beyond a reasonable doubt that Johnson committed murder, there is no reasonable probability that it would have nonetheless convicted him of the lesser offense if the second part had been correctly stated.

¶32 While it is theoretically possible that the jury did not follow the instruction perfectly, *Strickland*'s prejudice standard is framed in terms of reasonable probability of a different outcome but for the error, not a mere possibility.[4] *See State v. Bonds*, 2023 UT 1, ¶ 53 n.12, 524 P.3d 581 (rejecting the court of appeals' description of the "reasonable probability" language from the *Strickland* standard as similar to a "significant possibility" and clarifying that "we adhere to the 'reasonable probability' standard and the Supreme Court's analysis and application of this phrase" (cleaned up)). And because we presume juries follow their instructions, the mere theoretical possibility of a jury failing to follow the instructions as written does not rise to the reasonable probability standard mandated by *Strickland*. *See State v. Nelson*, 2015 UT 62, ¶ 28, 355 P.3d 1031 (explaining that the "likelihood of a different result must be substantial" (cleaned up)).

---

[4] We have previously applied a two-step process for determining whether an error in a jury instruction was prejudicial. *See State v. Grunwald*, 2020 UT 40, ¶ 22, 478 P.3d 1. The first step of that process asks "did the error in the jury instructions create the possibility that the jury convicted the defendant based on factual findings that would not have led to conviction had the instructions been correct?" *Id.* But here, we assume the jury followed the first part of the instruction. And because the jury ultimately did find that Johnson's conduct amounted to murder, we assume that it did not have to confront the mens rea error in the second part. Therefore, we do not have to ask whether the jury convicted Johnson based on factual findings that would not have led to conviction had the instructions been correct.

¶33 Given the unchallenged wording of the first part of the instruction and the jury's guilty verdict on the greater offense, we presume that the jury ruled out the possibility of convicting on the lesser offense based on the first part of the instruction alone. This means that the jury was never confronted with the error in the second part. Consequently, even if the mens rea had been stated correctly, there is no reasonable probability that the jury would have reached a different result.[5]

¶34 Because Johnson cannot establish that he was prejudiced by the error, the district court correctly ruled that he had not established ineffective assistance of counsel and dismissed his petition for postconviction relief.

## CONCLUSION

¶35 We conclude that because our decision in *Johnson II* necessarily vacated the court of appeals' ruling on prejudice in *Johnson I*, the district court did not err in analyzing prejudice without deferring to *Johnson I*. And we agree with the district court's analysis that the unchallenged first part of the lesser-included-offense instruction precludes a finding of prejudice. Therefore, we affirm.

––––––––––––

[5] The State has suggested that, under *Strickland*, a defendant can never establish prejudice from an error in a lesser-included-offense instruction where the jury convicts on a greater offense. But because we rest our decision on the unchallenged first part of the instruction, we have no need to decide whether a defendant can ever establish prejudice from an instructional error involving a lesser included offense where the jury convicts on the greater offense. We hold only that because Johnson has not challenged the first part of the instruction, which required the jury to first rule out the possibility that the offense amounted to murder, he cannot show a reasonable likelihood that the error in the second part affected the jury's verdict.